NOT DESIGNATED FOR PUBLICATION

No. 116,441

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID M. YOUNGER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Kingman District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed February 16, 2018. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE and ATCHESON, JJ.

PER CURIAM:  David M. Younger appeals his intentional second-degree murder conviction. In 2016, a jury convicted Younger of intentionally murdering his friend, Dan Ely. As his defense, Younger claimed that he shot and killed Ely in self-defense after an argument started between them. Now on appeal, Younger claims that (1) the district court erred in denying him immunity from prosecution; (2) the district court gave two clearly erroneous jury instructions; (3) the State did not disprove beyond a reasonable doubt that he acted in self-defense; (4) the district court erred in denying his motion to suppress; and

1

(5) alternatively, cumulative error requires reversal of his conviction. After carefully considering each of Younger's claims, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Prior to the events of December 14-15, 2014, Younger and Ely had a rather odd relationship. The two men were neighbors and also good friends. But according to Younger, Ely would often steal things from his residence, including tools, food, and liquor. After Younger would catch Ely stealing, Younger would forbid him from coming back to his house; this occurred on more than one occasion. Yet, Ely would not be forbidden from going to Younger's house for long. Eventually, Younger always allowed Ely back in his house so that Younger could take care of Ely, who had a drinking problem and suffered from several medical issues.

In December 2014, Younger visited his family out of town, so he asked Ely to collect his mail while he was gone. Younger returned home on Saturday, December 13, 2014, and he discovered that one of his guns was missing. Younger suspected that Ely stole the gun because he was the only person who had access to his house. Later that evening, Ely brought the collected mail back to Younger's house. Younger confronted Ely about the missing gun, but Ely was intoxicated, so Younger just sent him home.

The next day, Sunday, December 14, 2014, Younger invited some friends over to his house. During the day, the group drank alcohol, watched football, and socialized. Around noon, Ely joined the group at Younger's house. After an argument erupted between Ely and one of Younger's friends, Ely left the house. Throughout the rest of the day, Younger and his remaining friends continued to consume alcohol and socialize.

Around 9:00 or 10:00 that night, after Younger's friends had left, Ely returned to Younger's house. At this time, Younger again confronted Ely about the missing gun,

2

specifically accusing Ely of stealing the gun. Instead of confirming or denying he stole the gun, Ely made Younger and himself another alcoholic drink. Still again, Younger confronted Ely about the missing gun. This time, Ely denied stealing the gun.

According to Younger, an argument ensued, eventually becoming "heated." Ely became upset for being accused of stealing. While arguing, Younger claims that Ely reached toward his pant leg or boot. Ely was known to keep a gun in his boot, as other people who knew Ely later confirmed at trial. According to what Younger told the police, when Younger saw Ely reach toward his boot, he believed that Ely was going to shoot him. For that reason, Younger grabbed another gun he kept between the cushions of his couch and shot Ely in the face. According to what Younger later told the police, he believed the shooting occurred around 1:30 a.m. on December 15, 2014.

Younger did not call 911 immediately after the shooting. Instead, Younger first called his mother, Donna Weaverling, around 1:55 a.m. During the call, Younger told his mother he had shot someone in self-defense during an argument over a missing gun. While Younger was talking to Weaverling, her husband called 911 to report the shooting.

After Younger's brief conversation with his mother ended, Younger called his friend, Benjamin Boroughs, around 2 a.m. Initially, Boroughs missed the call, but he called Younger back. Younger answered, telling Boroughs that he shot Ely. During that call, Younger never mentioned that he was threatened by Ely or that any kind of fight occurred before the shooting.

Following his phone call with Boroughs, Younger called another friend, Lisa Furtaw, around 2:13 a.m. According to Furtaw, Younger told her that he "just put a bullet in Dan Ely's head"—and then Younger started laughing. Furtaw later testified that Younger told her:  "[I]f you don't believe me, you can come over here and see him, he's a

3

foot and a half away from me dead as a doornail." Furtaw testified that Younger appeared to be bragging about killing Ely without any remorse.

Soon thereafter, at approximately 2:18 a.m., Captain Paul Hinten from the Kingman Police Department arrived at Younger's house. Hinten knocked on the door and Younger invited him inside. As Hinten entered the residence, he could hear that Younger was on the phone with the police dispatcher. Once inside, Hinten observed Ely slumped over in a chair. Hinten could not find a pulse on Ely. Without giving the *Miranda* warnings, Hinten asked Younger what happened. Younger briefly replied that he and Ely had been in an argument. Hinten asked Younger where the weapon was located and he pointed to a gun lying on the couch next to him. No officer at the scene found a gun in Ely's boot or anywhere near Ely. Hinten eventually arrested Younger and took him to jail.

Later that morning, around 8:52 a.m., Senior Special Agent Jeff Newsum with the Kansas Bureau of Investigation interviewed Younger. Newsum began the interview by reading Younger the *Miranda* warning, and he agreed to speak to Newsum. Newsum recorded the interview and a redacted version was admitted at trial. In the interview, Younger stated that he believed that Ely stole his gun. He then stated that he confronted Ely about the stolen gun at his house, which led to a heated argument. Younger stated that he believed Ely was reaching for a weapon, so he pulled out a gun and shot Ely in the face or head area. Younger admitted that he never actually saw Ely with a gun. During the interview, Newsum did not observe any type of wounds on Younger.

On December 17, 2014, the State charged Younger with intentional second-degree murder in violation of K.S.A. 2016 Supp. 21-5403(a)(1). The district court held a preliminary hearing on March 10, 2015. After hearing the evidence, the district court found probable cause that Younger committed the crime and bound him over for trial.

4

Younger then filed several pretrial motions, including a motion to suppress his statements made prior to receiving the *Miranda* warning, a motion for a *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), hearing, and a motion claiming self-defense immunity. On January 20, 2016, by agreement of the parties, the district court held a single hearing on the three motions. The State presented three witnesses to testify on the immunity motion, Hinten, Boroughs, and Newsum. Hinton testified about his interaction with Younger at the scene of the shooting. Boroughs briefly testified about his phone call with Younger after the shooting. Newsum testified about his recorded custodial interview with Younger. The parties agreed that the *Jackson v. Denno* motion and the motion to suppress Younger's statements were essentially the same motion, and the State recalled Hinten and Newsum to testify on that motion. Their testimony focused on when Younger received his *Miranda* warnings, whether he understood his rights, and whether he appeared to be intoxicated when he talked to the law enforcement officers. Younger did not testify at the hearing.

After hearing the evidence, the district court made factual findings for all issues. The district court found that Younger shot Ely and that he was killed by a single gunshot wound to the head. The district court also found that Younger and others had been consuming alcohol earlier the day of the shooting and that Younger claimed the altercation began with an argument between him and Ely over a missing gun. The district court next found that while the two men were arguing, Ely reached for his boot, and Younger believed that Ely was reaching for a gun because he often kept a gun in his boot. The district court found that there was no physical altercation or threat of a physical altercation prior to the shooting and that Ely was not actually armed. The district court further found that although the two men had disputes in the past, they were friends and neighbors and, at the time of the shooting, Ely was in Younger's house with his permission. Finally, the district court found that when talking to Hinton and Newsum, Younger did not appear to be inebriated and he responded appropriately to the questions.

Addressing the *Jackson v. Denno*/motion to suppress statements first, the district court concluded that Younger gave all his statements voluntarily. It also determined that Younger's previous alcohol consumption did not prevent his statements from being given voluntarily. The district court next concluded that there was no *Miranda* violation because all of Younger's statements made to Hinten either were made while he was not in custody, the public-safety exception applied, or Younger spoke without provocation.

As for the motion for immunity from prosecution, the district court concluded that the State established probable cause that Younger was not entitled to self-defense immunity. The district court specifically ruled that a reasonable person under the circumstances would not have believed deadly force was necessary to prevent imminent death or great bodily harm. Notably, when the district court made its immunity ruling, it stated that it viewed the "evidence in the light favoring the State, meaning conflicts in the evidence must be resolved to the State's benefit and against a finding of immunity."

Younger's jury trial commenced on May 16, 2016, and the trial lasted four days. In addition to the above facts, the State presented expert testimony that the blood spatter on the Ely's boot indicated that at the time he was shot, he was not reaching for his boot. Also, the State presented expert testimony that the features of the gunshot wound indicated a near-contact wound, meaning that the distance between the gun and Ely's wound was less than a centimeter. Younger did not testify at trial. However, Younger's defense at trial was that he shot Ely in self-defense. The district court instructed the jury on intentional second-degree murder, voluntary manslaughter, and involuntary manslaughter. The jury found Younger guilty of intentional second-degree murder.

At sentencing, on July 5, 2016, the district court denied Younger's motion for a departure sentence. The district court imposed the standard presumptive sentence of 195 months' imprisonment. Younger timely filed a notice of appeal.

6

On appeal, Younger claims the district court erred when it found that he was not entitled to immunity from prosecution based on self-defense. Specifically, Younger argues that the district court erroneously viewed the evidence on the immunity issue in the light most favorable to the State. As to whether the error was harmless, Younger argues that the standard for harmless error set forth in *State v. Ultreras*, 296 Kan. 828, Syl. ¶ 3, 295 P.3d 1020 (2013), is "incorrect and leads to absurd results." Younger argues that his case should be remanded with orders to find him immune from prosecution or, alternatively, that his case should be remanded for the district court to review the evidence from the immunity hearing using the correct legal standard.

The State concedes that the district court used an incorrect legal standard when it stated that it viewed the evidence at the immunity hearing in the light most favorable to the State. However, under the record presented in this case, the State argues that the error was harmless because even under the appropriate legal standard, Younger was not entitled to immunity from prosecution.

By way of background, in 2010, the Kansas Legislature enacted a series of statutes addressing the use of force, including the use of deadly force, in the defense of a person or property, including a person's dwelling. See K.S.A. 2016 Supp. 21-5220 et seq. The new statutes became effective on July 1, 2011, and are commonly known as this state's "stand-your-ground law." In particular, K.S.A. 2016 Supp. 21-5231 states:

> "(a) A person who uses force which, subject to the provisions of K.S.A. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer's official duties and the officer identified the officer's self in accordance with any applicable law or the person using

force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.

"(b) A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (a), but the agency shall not arrest the person for using force unless it determines that there is probable cause for the arrest.

"(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause."

In *Ultreras*, the Kansas Supreme Court determined that the standard of proof for whether a defendant is entitled to immunity from criminal prosecution is probable cause. 296 Kan. at 845. Furthermore, the State bears the burden of establishing proof that the force used by the defendant was not justified as part of the probable cause determination under the immunity statute. 296 Kan. at 845. In other words, the State bears the burden of proving a negative, i.e., that the defendant's use of force in self-defense or defense of another person was *not* justified. Finally, the court determined that the application of an erroneous standard and burden of proof when ruling on a motion to dismiss that is based on a claim of immunity may be harmless if, under the test of K.S.A. 2016 Supp. 60-261 and K.S.A. 60-2105, there is no reasonable probability the error affected the outcome of the trial. 296 Kan. 828, Syl. ¶ 3.

In *State v. Hardy*, 51 Kan. App. 2d 296, 304, 347 P.3d 222 (2015), *rev'd* 305 Kan. 1001 (2017), this court held that in considering a motion for self-defense immunity, a district court must conduct an evidentiary hearing unless the parties stipulate to the factual record. The hearing should be held in conjunction with the preliminary hearing whenever possible. This court further held that consistent with making a probable cause determination at a preliminary hearing, the district court must view the evidence in a light favoring the State, meaning conflicts in the evidence must be resolved to the State's benefit and against a finding of immunity. 51 Kan. App. 2d at 304.

At the time of Younger's immunity hearing, this court's decision in *Hardy* was under review by the Kansas Supreme Court. Relying on that decision, the district court announced that it "must view the evidence in a light favoring the State" in addressing Younger's immunity claim. However, our court's ruling in *Hardy* was subsequently reversed by the Kansas Supreme Court, which held:

> "Upon a motion for immunity pursuant to K.S.A. 2016 Supp. 21-5231, the district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified." 305 Kan. 1001, Syl. ¶ 1.

Our Supreme Court has directed that in considering a defendant's motion for immunity, the district court must weigh the evidence without deference to the State, i.e., the district court does not view the evidence in a light favoring the State. Based on the totality of the circumstances, the district court must determine whether the State has carried its burden to establish probable cause that the defendant's use of force was not statutorily justified. 305 Kan. at 1011. On appeal of a district court's decision on a motion for immunity, our Supreme Court has set forth the applicable standard of review:

> "An appellate court will apply a bifurcated standard of review to a district court's determination of probable cause pursuant to K.S.A. 2016 Supp. 21-5231. When a district court's ruling entails factual findings arising out of disputed evidence, a reviewing court will not reweigh the evidence and will review those factual findings for supporting substantial competent evidence only. The ultimate legal conclusion drawn from those facts is reviewed de novo. When there are no disputed material facts, a pure question of law is presented over which an appellate court exercises unlimited review." 305 Kan. 1001, Syl. ¶ 5.

Returning to our case, as the State concedes, the district court erred at the immunity hearing when it stated that it must view the evidence in the light most favorable

9

to the State in determining whether the State established probable cause that Younger's use of force was not statutorily justified. However, under the record presented in this case, the State argues that the error was harmless.

As we have previously stated, our Supreme Court in *Ultreras* held that the district court's application of an erroneous standard and burden of proof when ruling on a motion to dismiss that is based on a claim of immunity may be harmless error. 296 Kan. at 845. The court concluded that because such an error is a statutory error, the harmless error test of K.S.A. 2016 Supp. 60-261 and K.S.A. 60-2105 applied. 296 Kan. at 845. For that reason, the court found that when an error occurs in addressing a defendant's claim of self-defense immunity "an appellate court must be persuaded there is no reasonable probability the error affected *the outcome of the trial* in order to find the error harmless." (Emphasis added.) 296 Kan. at 845 (citing *State v. Ward*, 292 Kan. 541, 564-65, 256 P.3d 801 [2011]).

In *Ultreras*, the district court erred in the immunity claim by imposing the burden of production of evidence on the defendant and by imposing a higher standard of proof than probable cause. 296 Kan. at 845. Ultimately, the *Ultreras* court ruled that this error was harmless, in part, because the defendant was convicted at a subsequent trial beyond a reasonable doubt. 296 Kan. at 846-47. Further, the *Ultreras* court found that the verdict was supported by sufficient evidence without any alleged errors and there was nothing offered throughout the criminal proceedings that undermined a probable cause finding regarding immunity. 296 Kan. at 846-47.

Younger argues that the harmless error standard applied in *Ultreras* is "incorrect and leads to absurd results." Unlike the defendant in *Ultreras*, Younger complains of trial errors, and he asserts that the evidence on self-defense presented by the State at trial was different than it presented at the immunity hearing. Younger points out that if the State fails to establish probable cause at an immunity hearing, then the defendant should not be

subjected to a trial in the first place. Younger argues that whether an error at an immunity hearing is harmless should not be judged by whether the error affected the outcome of the *trial*; rather, whether an error at an immunity hearing is harmless should be judged by whether the error affected the outcome of the *immunity hearing*.

However, the *Ultreras* court was clear regarding the harmlessness test, "an appellate court must be persuaded there is no reasonable probability the error affected the outcome of the trial in order to find the error harmless." 296 Kan. at 845. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no indication that our Supreme Court is departing from its decision in *Ultreras* as to the test for harmless error. But as we will explain in the following analysis, we believe that the district court's error in applying an incorrect legal standard at the immunity hearing was harmless under either the test set forth by our Supreme Court in *Ultreras* or under the modified test asserted by Younger.

Younger claims that if the district court had not viewed the evidence in the light most favorable to the State, the district court would have determined that the State presented insufficient evidence that immunity did not apply. But as the State points out, only the State presented evidence at the immunity hearing as to how the shooting happened and the district court was not confronted with a situation in which it had to resolve conflicts of evidence in favor of the State. The witnesses at the immunity hearing simply repeated to the court what Younger told them about the shooting. They testified that Younger said the altercation began with an argument between him and Ely over a missing gun. They further testified that, according to Younger, Ely reached for his boot, and Younger believed that Ely was reaching for a gun because he often kept a gun in his boot. This was the only version of the shooting presented to the district court at the hearing. Younger did not dispute the accuracy of this testimony, either at the hearing or later at trial. This was not a situation where the district court was forced to weigh

11

conflicting evidence or resolve disputed facts. Simply put, the district court considered the totality of the circumstances in finding that Younger was not entitled to immunity; it did not resolve conflicts in favor of the State because there were no conflicts to resolve.

In ruling on Younger's immunity claim, the district court set forth its factual findings on the record. The district court found that Younger shot Ely and that he was killed by a single gunshot wound to the head. The district court also found that Younger claimed that the altercation began with an argument between Younger and Ely over a missing gun. The district court found that while the two men were arguing, Ely reached for his boot, and Younger believed that Ely was reaching for a gun because he often kept a gun in his boot. The district court found that there was no physical altercation between the two men or threat of a physical altercation prior to the shooting and that Ely was not actually armed. The district court further found that although the two men had disputes in the past, at the time of the shooting, Ely was in Younger's house with his permission.

As the State points out, *none* of the district court's findings of fact were based on conflicting evidence presented at the immunity hearing. Although the district court *stated* that it viewed the evidence in the light most favorable to the State at the immunity hearing, it did not really do so because there were no conflicting facts for the district court to resolve in the first place. As a result, there is no reasonable probability that the district court's error in stating how it weighed the evidence affected the outcome of the immunity hearing. The error was harmless even under the test asserted by Younger.

The evidence presented by the State at the pretrial immunity hearing also was presented at Younger's jury trial, although the State also presented expert testimony and forensic evidence to support its claim that Younger did not shoot Ely in self-defense. Based on this evidence, the jury rejected Younger's self-defense claim and found him guilty of intentional second-degree murder *beyond a reasonable doubt.* As we will discuss in a later section of this opinion, we find that the jury's verdict was supported by

sufficient evidence. There was no evidence offered throughout the criminal proceedings that undermined the district court's probable cause finding regarding immunity. *Ultreras*, 296 Kan. at 846-47. In accordance with the harmless error test asserted by our Supreme Court in *Ultreras*, we find that the district court's error in applying an incorrect legal standard at the immunity hearing was harmless because there is no reasonable probability that the error affected the outcome of Younger's trial. 296 Kan. at 845.

The district court's ultimate ruling at the immunity hearing that Younger's use of deadly force was not objectively reasonable under the circumstances was a legal conclusion drawn by the district court based upon the undisputed evidence presented at the hearing. Because there were no disputed material facts presented at the immunity hearing, we exercise unlimited review over the district court's legal conclusion that Younger was not entitled to immunity from prosecution. *Hardy*, 305 Kan. 1001, Syl. ¶ 5. K.S.A. 2016 Supp. 21-5222(b) provides that a "person is justified in the use of deadly force . . . if such person *reasonably believes* that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." (Emphasis added.) The undisputed evidence at the immunity hearing established that Ely was an invited guest in Younger's home. Although the two men were arguing about a missing gun, there was no physical altercation or even any threat of a physical altercation before the shooting. Younger never saw a gun in Ely's possession before he shot him in the head, and Ely was not actually armed. Under these circumstances, we agree with the district court's legal conclusion that it was not objectively reasonable for Younger to believe he needed to use deadly force to prevent imminent death or great bodily harm.

To sum up, we are persuaded there is no reasonable probability that the district court's error in stating how it weighed the evidence affected the outcome of the immunity hearing. We also are persuaded there is no reasonable probability that the error affected the outcome of Younger's trial. Thus, under either the test asserted by Younger or under the test set forth in *Ultreras*, we conclude the district court's error was harmless.

13

Next, Younger claims the district court erred by failing to instruct the jury that the State was required to prove beyond a reasonable doubt that Younger did not act in self-defense. Specifically, Younger argues that K.S.A. 2016 Supp. 21-5108(c) imposes a new burden on the district court to instruct the jury that once a defendant satisfies the burden of producing competent evidence to support an affirmative defense, the State has the burden of disproving the defense beyond a reasonable doubt. Younger argues that the district court's failure to give this instruction constituted clear error. Conversely, the State argues that the district court's failure to give the instruction now requested by Younger was not clearly erroneous, relying on *State v. Staten*, 304 Kan. 957, 377 P.3d 427 (2016).

Kansas appellate courts follow a three-step process for analyzing jury instruction issues. First, the appellate court must determine whether it can review the issue. In other words, the court must determine whether it has jurisdiction over the issue and whether the complaining party preserved the issue. Second, the appellate court determines whether an error occurred. Third, the appellate court determines whether the error was harmless. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

At the second step of the analysis, this court must determine whether the instruction was legally and factually appropriate. An instruction is legally appropriate when the instruction fairly and accurately states the applicable law. An instruction that fails to do so is infirm. When determining whether the instruction was legally appropriate, this court's review is unlimited. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). Next, an instruction is factually appropriate when it is supported by the particular facts of the case. For this inquiry, this court reviews the evidence in the light most favorable to the defendant or the requesting party. Still, though, this court gives deference to the district court's factual findings, meaning that this court does not reweigh the evidence or redetermine credibility issues. *Plummer*, 295 Kan. at 161-62.

14

Younger concedes that he did not object at trial to the jury instructions on reasonable doubt and he did not request the district court to provide any instruction to the jury that was not given. Nevertheless, a defendant may argue for the first time on appeal that a jury instruction was clearly erroneous. See K.S.A. 2016 Supp. 22-3414(3). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

We begin again with some background. In 2010, the Kansas Legislature enacted a new statutory provision, K.S.A. 21-5108(c), explicitly indicating which party has the burden of proving/disproving self-defense in a criminal trial, which became effective in 2011. L. 2010, ch. 136, § 8. The new provision states:

> "A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Competent evidence is that which could allow a rational fact finder to reasonably conclude that the defense applies. Once the defendant satisfies the burden of producing such evidence, the state has the burden of disproving the defense beyond a reasonable doubt." K.S.A. 2016 Supp. 21-5108(c).

For the first time on appeal, Younger argues that K.S.A. 2016 Supp. 21-5108(c) imposes a new burden on the district court to give "an additional instruction to inform the jury that, not only must the State prove the elements of the charge offense beyond a reasonable doubt, but also that it must disprove the asserted affirmative defense beyond a reasonable doubt." Younger asserts that the district court erred by failing to instruct the jury on reasonable doubt according to the provisions of K.S.A. 2016 Supp. 21-5108(c), and he goes on to argue that "[b]ecause the jury instructions, as given, may have misled or confused the jury as to what the State had to do in regards to the affirmative defense, the failure to give the instruction was clear error."

15

At Younger's trial, in Instruction No. 2, the district court gave the jury the general instruction on burden of proof found at PIK Crim. 4th 51.010. Instruction No. 2 stated:

"The State has the burden to prove the Defendant is guilty. The Defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the Defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the Defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the Defendant guilty."

Also, in Instruction No. 7, the district court instructed the jury on burden of proof as to self-defense found at PIK Crim. 4th 51.050. Instruction No. 7 stated: "The Defendant raises use of force as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the Defendant is guilty. The State's burden of proof does not shift to the Defendant."

As the State points out, Younger's argument that the district court committed clear error by failing to instruct the jury in accordance with K.S.A. 2016 Supp. 21-5108(c) already has been rejected by our Supreme Court in *Staten*. In *Staten*, the defendant was charged with aggravated battery and claimed self-defense. The district court instructed the jury on the crime charged, the theory of self-defense, and the State's general burden of proof in a criminal case found at PIK Crim. 4th 51.010. Of import, the district court failed to give PIK Crim. 4th 51.050 or a similar instruction. 304 Kan. at 962-64.

On appeal, Staten asserted that the district court committed clear error because it did not instruct the jury that the State must prove beyond a reasonable doubt that he did not act in self-defense. In assessing Staten's claim on appeal, our Supreme Court

16

determined that the Legislature's enactment of K.S.A. 2015 Supp. 21-5108(c) did not alter Kansas law:

> "This amendment codified the caselaw requirement that, once a defendant properly asserts a self-defense affirmative defense, the State must disprove that defense beyond a reasonable doubt. . . . The amendment did not alter the law in Kansas concerning the State's burden of proof, and it did not create a new element that the State must prove when charging a crime. Statutory self-defense is a rebuttable defense to certain crimes, as it was before the amendment. [Citations omitted.]" 304 Kan. at 965-66.

The *Staten* court ruled that appellate courts—even after the enactment of K.S.A. 2015 Supp. 21-5108(c)—must continue to review jury instructions as a whole to determine if "everything necessary for the jury to consider the burden of proof was contained within the instructions." 304 Kan. at 966. The *Staten* court found that the district court's failure to give an instruction consistent with PIK Crim. 4th 51.050 was error, but it was not clear error. 304 Kan. at 967. Notably, the *Staten* court did not find that the district court erred based on a failure to expressly instruct the jury using the statutory language in K.S.A. 2015 Supp. 21-5108(c); instead, the court found the jury instructions considered as a whole were not clearly erroneous. 304 Kan. at 967.

Younger's case is distinguishable from *Staten* because in that case the district court did not provide the jury with an instruction consistent with PIK Crim. 4th 51.050. Nevertheless, our Supreme Court in *Staten* concluded that the jury instructions as a whole were not clearly erroneous. 304 Kan. at 967. If the jury instructions provided by the district court in *Staten* were not clearly erroneous, then certainly the district court's jury instructions in Younger's case, including Instruction No. 7, were not clearly erroneous when considered as a whole. Stated differently, the district court did not commit clear error by failing to expressly instruct the jury on the State's burden of disproving self-defense beyond a reasonable doubt in accordance with K.S.A. 2016 Supp. 21-5108(c). See also *State v. Langston*, No. 116,992, 2017 WL 5951828, at *8 (Kan. App. 2017)

17

(unpublished opinion) (concluding under similar circumstances that it was not error to use the same PIK instructions used in Younger's case), *petition for rev. filed* December 29, 2017.

Younger also cites *May v. Cline*, 304 Kan. 671, 672, 372 P.3d 1242 (2016), to support his argument. In that case, prison staff determined that an inmate was guilty of fighting, in violation of K.A.R. 44-12-301 (2012 Supp.), which provided:  "Fighting or other activity which constitutes violence, or which is likely to lead to violence, is prohibited unless such activity is in self-defense. Violation of this rule shall be a class I offense." 304 Kan. at 672-73. In determining that the inmate was guilty of fighting, the prison staff concluded that the inmate provided no evidence to support his claim of self-defense. On review, our Supreme Court determined that the regulation itself made absence of self-defense an element of the violation. 304 Kan. at 676. Thus, the court determined that the burden was on the prison staff to come forward with evidence showing that the inmate was not fighting in self-defense, and in the absence of such evidence, the court found that the inmate was not given due process. 304 Kan. at 676-77.

From *May*, Younger relies on a single statement to support his argument:

> "*The law of self-defense pertaining to criminal acts in Kansas has been modified such that a burden-shifting scheme is now employed*. A defendant claiming self-defense must first meet the burden to come forward with some competent evidence in support of the claim, and thereafter, 'the state has the burden of disproving the defense beyond a reasonable doubt.' K.S.A. 2015 Supp. 21-5108(c)." (Emphasis added.) 304 Kan. at 676.

Based on the above language, Younger argues that *Staten* was wrongly decided. He asserts that "the Court's conclusion in *May* more accurately describes the effect of the modification to K.S.A. 21-5108(c) as creating a burden-shifting scheme that had not previously existed."

18

We conclude that Younger's reliance on *May* is misguided. First, the facts in Younger's case are clearly distinguishable from the facts in *May*, and that case does not even involve a jury instruction issue. Second, the language in *May* cited by Younger is dicta because it was not necessary to our Supreme Court's ultimate ruling in that case. Third, as our Supreme Court clearly explained in *Staten*, which was decided after *May*, the law regarding the proving of self-defense did not change as a result of the enactment of K.S.A. 2016 Supp. 21-5108(c). See *Staten*, 304 Kan. at 965-66.

Finally, Younger cites *State v. Joeckel*, No. 105,117, 2012 WL 307661 (Kan. App. 2012) (unpublished opinion), to support his claim. In that case, the State charged the defendant with aggravated battery. During closing arguments, defense counsel said that the State had to disprove self-defense beyond a reasonable doubt. The State objected on the ground that defense counsel misstated the law, and the district court sustained the objection. On appeal, this court found that the district court properly sustained the objection because Kansas Supreme Court precedent supported the proposition that the State was not required to disprove self-defense. 2012 WL 307661, at \*5. On alternative grounds, this court determined that even assuming that sustaining the objection was error, that error was cured by the district court giving a jury instruction which was the equivalent of PIK Crim. 4th 51.050. 2012 WL 307661, at \*6.

Notably, Joeckel's trial occurred before K.S.A. 21-5108(c) was enacted, so the statute did not apply to him. As a result, Younger uses *Joeckel* as further support that K.S.A. 21-5108(c) actually changed the law. We find this argument unpersuasive for two reasons. First, we are bound by Kansas Supreme Court precedent and *Staten* is on point in regard to this issue, not *Joeckel*. Second, the *Joeckel* panel found that by giving a jury instruction which was the equivalent of PIK Crim. 4th 51.050, any error resulting from a misstatement of law regarding the State's burden of disproving self-defense was cured. Thus, even if this court followed the reasoning of *Joeckel*, we would still find that the

19

jury instructions in Younger's case, which included an instruction equivalent to PIK Crim. 4th 51.050, were not clearly erroneous.

SUFFICIENCY OF THE EVIDENCE

Next, Younger claims the State presented insufficient evidence at trial for the jury to find beyond a reasonable doubt that he did not act in self-defense. Specifically, Younger argues that the State failed to satisfy the requirements of K.S.A. 2016 Supp. 21-5108(c) and K.S.A. 2016 Supp. 21-5222(b), meaning that the State failed to disprove beyond a reasonable doubt the elements of self-defense pursuant to K.S.A. 2016 Supp. 21-5222(b).

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

As discussed in the prior issue, K.S.A. 2016 Supp. 21-5108(c) requires the State to disprove the affirmative defense of self-defense beyond a reasonable doubt. Kansas criminal defendants are only entitled to such an instruction when they present competent evidence to support self-defense. K.S.A. 2016 Supp. 21-5108(c). Competent evidence means evidence that could allow a reasonable fact-finder to reasonably conclude that self-defense applies under the circumstances of the case. K.S.A. 2016 Supp. 21-5108(c).

Here, the district court presumably found that Younger presented competent evidence that he was entitled to a self-defense instruction because the district court gave

20

such an instruction. Moreover, the State did not contest the self-defense instruction. As Younger presented competent evidence of self-defense, the State had the burden of disproving the defense beyond a reasonable doubt. K.S.A. 2016 Supp. 21-5108(c). This leads to the specific issue on appeal: Did the State present sufficient evidence for a rational fact-finder to conclude beyond a reasonable doubt that the State disproved self-defense under K.S.A. 2016 Supp. 21-5222(b)?

K.S.A. 2016 Supp. 21-5222 provides in its entirety:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person."

Because Younger used deadly force by killing Ely, subsection (b) applies to this case, which also incorporates language from subsection (a). The statute contains both a subjective and an objective test. Based on the language "when and to the extent it appears to such person," the State is required to show that the defendant honestly and sincerely believed that deadly force was necessary to prevent imminent death or great bodily harm. This is a subjective test. Based on the language "such person reasonably believes that such use of deadly force is necessary," the State is required to show that a reasonable person in the defendant's circumstances would have believed that deadly force was necessary to prevent imminent death or great bodily harm. This is an objective test. *State v. Salary*, 301 Kan. 586, 593-94, 343 P.3d 1165 (2015) (citing *State v. Friday*, 297 Kan.

21

1023, 1037, 306 P.3d 265 [2013]). Because the State bears the burden, it is required to disprove at least one part of the two-part test. See K.S.A. 2016 Supp. 21-5108(c).

As to the subjective prong, the State argues that "there is simply a dearth of evidence upon which one could reasonably conclude that [Younger] had a subjective belief that the use of deadly force was necessary to protect himself from the imminent unlawful use of force by Ely." The State argues that because Younger did not testify, there was no direct evidence of his subjective state of mind. This argument is flawed because it misplaces the burden on Younger. Furthermore, at trial, the State actually presented evidence that Younger believed he was acting in self-defense. Newsum testified that Younger stated in an interview that he repeatedly believed that Ely was reaching for a gun when he shot him. Moreover, in the videotape of the interview, which was admitted into evidence without objection, Younger is seen stating multiple times that he believed Ely was reaching for a gun, implying that he shot Ely in self-defense.

Turning to the objective prong, the State presented evidence that Younger and Ely were friends and that Ely was an invited guest in Younger's home on the night of the shooting. Through the testimony of multiple witnesses, the State elicited testimony indicating that no physical fight or threat of a physical fight occurred prior to the shooting. Most importantly, the State presented evidence that Younger never saw a gun before shooting Ely and that Ely, in fact, did not have a gun in his possession.

The State also called Furtaw as a witness at trial. She testified that Younger called her after the shooting and told her that he shot Ely because he stole a gun from him. On top of that, Furtaw testified that Younger laughed while making the call. This testimony contradicted Younger's version of the shooting that he gave to the police. The State also presented expert testimony that the blood spatter on Ely's boot indicated that at the time he was shot, he was not reaching for his boot. Also, the State presented expert testimony that the features of the gunshot wound indicated a near-contact wound, meaning that the

22

distance between the gun and Ely's wound was less than a centimeter. This evidence contradicted Younger's statement that he gave to the police.

Younger is asking this court to reweigh the evidence presented at his trial, which an appellate court will not do. See *Dunn*, 304 Kan. at 822. Viewing the evidence in the light most favorable to the State, we conclude that the State sufficiently disproved the objective prong of self-defense beyond a reasonable doubt. Stated differently, the State presented sufficient evidence for the jury to find beyond a reasonable doubt that Younger did not reasonably act in self-defense. Thus, Younger's conviction of intentional second-degree murder was supported by sufficient evidence presented at the trial.

MOTION TO SUPPRESS

Next, Younger claims the district court erred in denying his motion to suppress statements he made prior to being informed of his *Miranda* rights. In particular, Younger argues that he was in custody when Hinten arrived at the scene of the shooting and asked "what happened." As a result, Younger argues that he should have been informed of his *Miranda* rights before Hinten asked the question. He also asserts that the public safety exception relied upon in part by the district court does not apply to his case. Asserting that these errors were not harmless, Younger asks this court to reverse his conviction.

The State argues that the district court did not err in refusing to suppress Younger's statements made to Hinten upon his arrival at the scene because the questions were not part of a custodial interrogation. The State also argues that the district court properly relied on the public safety exception to find that Younger's statements were admissible.

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The

23

ultimate legal conclusion is reviewed using a de novo standard. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

Hinten was the first law enforcement officer to arrive at the scene of the shooting. He knocked on Younger's door, was invited into the house, and observed Ely slumped over in a chair. Without giving Younger the *Miranda* warning, Hinten asked, "[W]hat happened?" Younger responded that he and Ely had been in an argument. Hinten asked Younger where the weapon was located and he pointed to a gun lying on the couch next to him. The district court denied the motion to suppress, finding that the statements were not made as a result of a custodial interrogation. The district court also concluded that the public safety exception applied to any questions related to the location of the weapon. See *New York v. Quarles*, 467 U.S. 649, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984).

The Fifth Amendment to the United States Constitution prevents any person from being compelled to be a witness against himself or herself in a criminal case. Section 10 of the Kansas Constitution Bill of Rights recognizes the same guarantee. In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966), the United States Supreme Court extended this privilege when it held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) Thus, officers must inform an individual accused of a crime that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444.

24

*Miranda* involved four separate cases where law enforcement officers took the defendants into custody and interrogated them in a police station for the purpose of obtaining a confession. The Court made it clear that its decision was only intended to apply to in-custody interrogation, and it was not intended to apply to general on-the-scene police questioning of a suspect in the fact-finding process. The Court stated:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime. [Citation omitted.] . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In such situations, the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477-78.

Since *Miranda*, courts have recognized a distinction between a custodial interrogation and an investigatory interrogation. *State v. Jacques*, 270 Kan. 173, 185-86, 14 P.3d 409 (2000). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." 270 Kan. at 186 (quoting *Miranda*, 384 U.S. at 444). An investigatory interrogation is the questioning of a person by a law enforcement officer in a routine manner before the investigation has reached the accusatory stage and where the person is not in legal custody or deprived of his or her freedom in any significant way. 270 Kan. at 186. An objective standard is used to judge whether an interrogation is custodial or investigatory. *Miranda* safeguards are only required for custodial interrogations, but not for investigatory, noncustodial interrogations. 270 Kan. at 186.

A court may consider the following list of nonexclusive factors when determining whether an interrogation is custodial or investigatory in nature: (1) The place and time of the interrogation; (2) the duration of the interrogation; (3) the number of police officers present; (4) the conduct of the officers and the person subject to the interrogation; (5) the

25

presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) whether the person is being questioned as a suspect or a witness; (7) whether the person being questioned was escorted by the police to the interrogation location or arrived under his or her own power; and (8) the result of the interrogation, for instance, whether the person was allowed to leave, was detained further, or was arrested after the interrogation. No one factor outweighs another, nor do the factors bear equal weight. Every case must be analyzed on its own particular facts. *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014).

Turning to our facts, the district court correctly ruled that Younger was not in custody for purposes of *Miranda* when Hinten asked him "what happened." Before Hinten arrived at Younger's home by himself, Younger had called the police, presumably seeking assistance; we know this because when Hinten arrived at Younger's home, Younger was on the phone with the police dispatcher. Further, Younger invited Hinten into his home when Hinten knocked on the door. Immediately after being invited in and seeing Ely shot and slumped over in the chair, Hinten asked "what happened." At that point, Hinten did not know anything about the shooting. Hinten later testified that he thought an intruder was possibly shot. Hinten's initial question of "what happened" clearly was an on-the-scene investigatory question as part of the fact-finding process of the case. When Hinten asked "what happened," Younger was unrestrained and the investigation had not reached the accusatory stage. Likewise, Hinten's initial question about the location of the weapon was part of the investigatory process.

Hinten's on-the-scene questioning was consistent with an investigatory interrogation rather than a custodial interrogation. Accordingly, the district court did not err in denying Younger's motion to suppress his statements. Based on this conclusion, we do not need to address the district court's alternative rationale that the statement about the location of the weapon was admissible under the public safety exception.

26

Next, Younger claims the district court erred in failing to instruct the jury to consider voluntary manslaughter simultaneously with second-degree murder. Specifically, Younger contends that the district court erroneously instructed the jury to consider voluntary manslaughter only if it did not agree that he was guilty of second-degree murder. Younger argues that this error was not harmless and asks this court to reverse his conviction and remand for a new trial.

The State contends that the district court did not commit clear error by failing to instruct the jury to consider the lesser included offense of voluntary manslaughter simultaneously with the charge of second-degree murder. The State points out that the jury instructions given by the district court were identical to the recommended pattern instructions in PIK Crim. 4th. The State also notes that the exact issue Younger is raising on appeal already has been rejected by this court in *State v. Brown*, No. 110,234, 2015 WL 3513997 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1079 (2016).

We have previously set forth the applicable standard of review for analyzing jury instruction issues. Younger concedes that he did not object to the jury instructions given by the district court. Thus, he is entitled to relief only if he establishes that the questioned jury instructions were clearly erroneous. See K.S.A. 2016 Supp. 22-3414(3). To establish clear error, "the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict." *Cooper*, 303 Kan. at 771.

We begin our analysis by noting that when the district court instructs the jury to consider lesser included offenses based on evidence presented at trial, the district court usually instructs the jury to consider the lesser offenses sequentially to the offense charged. See *State v. Parker*, 301 Kan. 556, 561-62, 344 Kan. 363 (2015). For example, if the defendant is charged with first-degree murder and the evidence supports an

27

instruction on second-degree murder, the district court should instruct the jury: "If you do not agree that the defendant is guilty of murder in the first degree, you should then consider the lesser included offense of murder in the second degree." *Parker*, 301 Kan. at 561-62; PIK Crim. 4th 54.140. The jury is not instructed to unanimously reject the crime charged before it considers the lesser crime, but it is proper to instruct the jury to consider the lesser crime only if it does not agree the defendant is guilty of the crime charged. *Parker*, 301 Kan. at 562; see also *State v. Carter*, 284 Kan. 312, 331, 160 P.3d 457 (2007) (instructions directing jurors to consider lesser offenses only if they do not agree on crime charged were not coercive and correctly stated the law).

We will now turn to the applicable jury instructions given by the district court at Younger's trial. The State charged Younger with intentional second-degree murder in violation of K.S.A. 2016 Supp. 21-5403(a)(1). The district court instructed the jury on the charge of intentional second-degree murder as well as the lesser offenses of voluntary manslaughter and involuntary manslaughter. Younger asserted that voluntary manslaughter was applicable because evidence supported a possibility that he knowingly killed Ely upon a sudden quarrel or upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of himself, i.e., imperfect self-defense. The district court instructed the jury on murder in the second degree as follows:

"INSTRUCTION NO. 4

"The defendant is charged with Murder in the Second Degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

. . . .

"3. The Defendant intentionally killed Dan Ely.

"4. This act occurred on or about the 15th day of December 2014, in Kingman County, Kansas.

28

"A Defendant acts intentionally when it is the Defendant's desire or conscious objective to do the act complained about by the State."

As to the lesser offense of voluntary manslaughter, the district court instructed the jury as follows:

"INSTRUCTION NO. 5

"*If you do not agree that the Defendant is guilty of Murder in the Second Degree*, you should then consider the lesser included offense of voluntary manslaughter.

"To establish this charge, each of the following claims must be proved:

"1. The Defendant knowingly killed Dan Ely.

"2. It was done upon a sudden quarrel or upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of himself.

"3. This act occurred on or about the 15th day of December 2014, in Kingman County, Kansas.

"A Defendant acts 'knowingly' when the Defendant is aware of the circumstances in which he was acting or that his conduct was reasonably certain to cause the result complained about by the State." (Emphasis added.)

As the State points out, the instructions given by the district court were identical to the recommended pattern instructions in PIK Crim. 4th. Our Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to [jury] instructions." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015).

For the first time on appeal, Younger argues that the district court erroneously instructed the jury to consider voluntary manslaughter only if it did not agree that he was guilty of second-degree murder. Younger argues that, contrary to the sequential order in which juries usually consider lesser offenses, the jury should have been instructed to consider voluntary manslaughter at the same time that it considered second-degree

29

murder. To support this claim, Younger cites *State v. Graham*, 275 Kan. 831, 69 P.3d 563 (2003), and *State v. Cribbs*, 29 Kan. App. 2d 919, 34 P.3d 76 (2001).

In *Cribbs*, Damone Lee Cribbs shot and wounded Angela Jones, a woman with whom he had been living. At trial, Cribbs testified that Jones was upset with him while also holding a gun. Cribbs testified that to protect himself, he rushed Jones in an attempt to get the gun from her. While trying to wrestle the gun away from Jones, Cribbs testified that he inadvertently shot her. The district court instructed the jury on attempted voluntary manslaughter as a lesser offense of attempted second-degree murder based on the evidence that the crime was committed upon a sudden quarrel or in the heat of passion. The instruction read in part: "'If you do not agree that the defendant is guilty of the crime of an attempt to commit the crime of murder in the second degree, you should then consider the lesser included offense of an attempt to commit the crime of voluntary manslaughter.'" 29 Kan. App. 2d at 922. The jury found Cribbs guilty of attempted second-degree murder and criminal possession of a firearm.

On appeal, Cribbs argued that the district court erred by instructing the jury to consider attempted voluntary manslaughter only if it did not agree that he was guilty of attempted second-degree murder. Cribbs pointed out that pursuant to PIK Crim. 3d 56.05, when voluntary manslaughter is submitted to the jury as a lesser offense of second-degree murder, the district court should use alternative B, which instructs the jury to consider the lesser offense of voluntary manslaughter together with the charge of second-degree murder.

This court agreed with Cribbs and found that the attempted voluntary manslaughter instruction given by the district court was clearly erroneous. 29 Kan. App. 2d at 924. This court reasoned that by instructing the jury to consider attempted voluntary manslaughter only if it did not agree that Cribbs was guilty of attempted second-degree murder, the jury never considered whether Cribbs committed the crime upon a sudden

30

quarrel or in the heat of passion. This court concluded that when attempted voluntary manslaughter is a lesser included offense of attempted second-degree murder, the jury must consider the crimes simultaneously. 29 Kan. App. 2d at 924.

Our Supreme Court adopted the *Cribbs* court's reasoning in *Graham*. In that case, James L. Graham stabbed Donald Crow who was supposedly flirting with Graham's wife. Crow testified that Graham attacked and stabbed him without provocation, presumably out of jealousy. Conversely, Graham testified that Crow was attacking his wife when he arrived at the scene, so Graham attacked and stabbed Crow in order to protect his wife. At trial, the district court instructed the jury on attempted second-degree murder and attempted voluntary manslaughter. The attempted voluntary manslaughter instruction read in part: "If you do not find the defendant is guilty of Attempted Second-Degree Murder, you should then consider the lesser included offense of Attempted Voluntary Manslaughter." 275 Kan. at 832. The jury found Graham guilty of attempted second-degree murder.

On appeal, Graham argued that the district court committed clear error by instructing the jury to consider the lesser offense of attempted voluntary manslaughter only if it did not find that he was guilty of attempted second-degree murder. Relying on the analysis in *Cribbs*, our Supreme Court agreed that the jury should have considered the charges together. 275 Kan. at 837. The court reasoned:

> "Both second degree-murder and voluntary manslaughter are intentional killings. An
> intentional homicide is reduced from murder to voluntary manslaughter if it is committed
> upon a sudden quarrel or in the heat of passion under K.S.A. 21-3403(a). Where the
> homicide is intentional and there is some evidence the homicide was committed under the
> mitigating circumstances contained in K.S.A. 21-3403(a), the appropriate voluntary
> manslaughter instruction should be considered by the jury during its consideration of
> second-degree intentional murder. Thus, where there is evidence of mitigating
> circumstances justifying an instruction on voluntary manslaughter in a case where

31

voluntary manslaughter is a lesser included offense, a failure to instruct the jury to consider such circumstances [consistent with PIK Crim. 3d 56.05B] in its determination of whether the defendant is guilty of second-degree murder, is always error—and in most cases—presents a case of clear error." 275 Kan. at 837.

As in *Cribbs*, our Supreme Court found that the jury instruction was erroneous because "it deprived Graham of the opportunity to have the jury consider mitigating circumstances which might have reduced attempted second-degree murder to attempted voluntary manslaughter." 275 Kan. at 840. Again like in *Cribbs*, our Supreme Court found that there was a real possibility that the outcome of the trial would have been different without the error. 275 Kan. at 840. As such, our Supreme Court reversed Graham's conviction and remanded for a new trial. 275 Kan. at 840; see also *State v. Miller*, 293 Kan. 46, 53, 259 P.3d 701 (2011) (reversing defendant's conviction of intentional second-degree murder committed in 2007, relying on *Graham* and *Cribbs*).

The State asserts that *Cribbs* and *Graham* are no longer good law because after these cases were decided, the Kansas Legislature amended the voluntary manslaughter statute to change the culpable mental state necessary to commit the crime. As the State points out, our court has specifically rejected the claim Younger brings in this appeal in *Brown*. Before discussing *Brown*, we will address the statutory amendments to the culpable mental state for voluntary manslaughter.

Prior to July 1, 2011, both second-degree murder and voluntary manslaughter were intentional killings. See K.S.A. 21-3402; K.S.A. 21-3403. In fact, "intentionally" and "knowingly" were considered to be the same mental culpability. See K.S.A. 21-3201(b) ("Intentional conduct is conduct that is purposeful and willful and not accidental. As used in this code, the terms 'knowing,' 'willful,' 'purposeful,' and 'on purpose' are included within the term 'intentional.'").

32

In 2011, our Legislature amended the definitions of the various culpable mental states. The terms "intentionally" and "knowingly" are now separated and ranked by degree, with "intentionally" being ranked as a higher degree of culpability than "knowingly." K.S.A. 2016 Supp. 21-5202(b)(1)-(2). Second-degree murder is still defined as the killing of a human being committed intentionally. K.S.A. 2016 Supp. 21-5403(a)(1). However, voluntary manslaughter is now defined as *knowingly* killing a human being committed upon a sudden quarrel or in the heat of passion, or upon an unreasonable but honest belief that circumstances existed that justified the use of deadly force. K.S.A. 2016 Supp. 21-5404(a)(1)-(2).

K.S.A. 2016 Supp. 21-5202(h) defines "intentionally" as follows:

"A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are specific intent crimes. A crime may provide that any other culpability requirement is a specific intent."

K.S.A. 2016 Supp. 21-5202(i) defines "knowingly" as follows:

"A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'knowingly,' 'known,' or 'with knowledge' are general intent crimes."

33

The underlying premise supporting the holding in *Graham* was that both second-degree murder and voluntary manslaughter are intentional killings. 275 Kan. at 837. Now, the Kansas Legislature has separated knowingly from intentionally, while giving the terms different definitions. The Legislature has determined that sudden quarrel/heat of passion or imperfect self-defense mitigates a killing done knowingly, but knowingly is a less culpable mental state than intentionally. Under the current Kansas criminal code, there are no similar mitigating circumstances for an intentional killing.

Following the 2011 statutory amendments, the PIK Criminal Advisory Committee modified the voluntary manslaughter instruction at PIK Crim. 4th 54.170 to reflect the new culpable mental state of the crime. The PIK committee eliminated alternative B previously found in PIK Crim. 3d 56.05 which stated, pursuant to *Cribbs* and *Graham*, that when the district court instructed the jury on voluntary manslaughter as a lesser offense of second-degree murder, the jury must be instructed to consider the charges together. Under PIK Crim. 4th 54.170, when voluntary manslaughter is submitted as a lesser offense of second-degree murder, the jury must be instructed: "If you do not agree that the defendant is guilty of [second-degree murder], you should then consider the lesser included offense of voluntary manslaughter." See PIK Crim. 4th 54.170.

With this discussion as background, we will now turn to this court's decision in *Brown*. In that case, Christopher Brown was driving his car in Topeka and he pulled up alongside Anthony Herrera, who was driving to Mark Webster's house. Brown asked Herrera about an individual named Travon Praylow, whom Brown believed had previously injured his cousin. Herrera said he did not know where Praylow was and then continued to Webster's house. As Herrera continued driving, he realized that Brown was following him, so he called Webster to inform him of the situation and to have Webster meet him outside. At Webster's house, an argument ensued between Brown and Herrera. Herrera testified that Brown pulled out a gun and started shooting, hitting Herrera once. Brown testified that while he was talking to Herrera, Webster pulled out a gun and started

34

shooting. Brown testified that in self-defense, he fired shots at Webster and Herrera so he could get away.

A jury convicted Brown of attempted second-degree murder and other crimes. Brown appealed, arguing that pursuant to *Graham* and *Cribbs*, the district court committed clear error by giving an inappropriate attempted voluntary manslaughter instruction. Brown complained that the following part of the attempted voluntary manslaughter instruction was clearly erroneous: "'If you do not agree that the defendant is guilty of attempted murder in the second degree you should then consider the lesser included offense of attempted voluntary manslaughter.'" 2015 WL 3513997, at *5.

This court concluded that this instruction was not erroneous, let alone clearly erroneous. 2015 WL 3513997, at *7. This court discussed the 2011 statutory amendments to the culpable mental state for voluntary manslaughter and the changes in the PIK instructions that followed. This court noted that the statutory amendments changed the culpable mental state of voluntary manslaughter from intentionally to knowingly, and that knowingly is a less culpable mental state than intentionally. This court reasoned that based on the amendments, the Legislature has determined that sudden quarrel/heat of passion or imperfect self-defense mitigates a killing done knowingly, but there are no similar mitigating circumstances for an intentional killing. 2015 WL 3513997, at *7.

This court determined that *Graham* and *Cribbs* were no longer good law because they were based on the statutes prior to the 2011 amendments. 2015 WL 3513997, at *6. In making that determination, this court noted that *Graham* based its analysis on the fact that second-degree murder and voluntary manslaughter were both intentional killings, and the only difference between the two crimes was that voluntary manslaughter included mitigating circumstances. Thus, under *Graham*, for a jury to properly determine whether an intentional killing was second-degree murder or voluntary manslaughter, the jury must consider both charges at the same time. 2015 WL 3513997, at *6-7.

35

This court reasoned that because the culpable mental states of second-degree murder and voluntary manslaughter are no longer the same, mitigating circumstances are no longer the only difference between the two crimes. 2015 WL 3513997, at *7. As a result, this court held that when voluntary manslaughter is submitted to the jury as a lesser offense to second-degree murder, the lesser offense can be considered sequentially, i.e., the jury must consider voluntary manslaughter only if it does not agree that the defendant is guilty of second-degree murder. 2015 WL 3513997, at *7.

Younger argues that *Brown* was wrongly decided. He asserts that "the Court's holding in *Brown* overstates the effect of the revision of voluntary manslaughter from an intentional to a knowing crime. This revision may affect the State's burden in proving voluntary manslaughter, but it did not substantively alter its application as a lesser offense of second-degree murder." In particular, Younger argues that this court's analysis in *Brown* ignored the effect of K.S.A. 2016 Supp. 21-5202(c), which states:

> "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."

Younger argues that under K.S.A. 2016 Supp. 21-5202(c), "if a person acted intentionally to commit second-degree murder it suffices to prove that he acted knowingly to commit voluntary manslaughter, subject to the mitigating circumstances." Thus, Younger argues that when voluntary manslaughter is submitted to the jury as a lesser offense of second-degree murder, the district court still must instruct the jury to consider the charges simultaneously in order for the jury to be able to properly consider the mitigating circumstances separating the two crimes.

36

Younger correctly points out that under K.S.A. 2016 Supp. 21-5202(c), proof of intentional conduct suffices to establish knowing conduct. However, we do not believe that K.S.A. 2016 Supp. 21-5202(c) applies to the application of lesser included offenses because the plain language of subsection (c) indicates it only applies to crimes charged. The introductory sentence to subsection (c) states: "Proof of a higher degree of culpability *than that charged* constitutes proof of the *culpability charged*." (Emphasis added.) Stated differently, if a defendant is *charged* with voluntary manslaughter and the State presents sufficient evidence to prove intentional conduct, then the State has sufficiently established the culpable mental state for the crime charged. But subsection (c) does not change the fact that under the current definitions of the crimes, second-degree murder is an intentional killing while voluntary manslaughter is a killing committed knowingly, and the change in the culpable mental state of voluntary manslaughter alters its application as a lesser offense of second-degree murder.

As we previously stated, the Kansas Legislature has separated knowingly from intentionally, while giving separate definitions to the terms. Second-degree murder is still defined as an intentional killing, while voluntary manslaughter is now defined as a killing committed knowingly. The existence of mitigating circumstance is no longer the only difference between the two crimes. When the Legislature revises an existing law, the court presumes that the Legislature intended to change the law as it existed prior to the amendment. *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012).

Although the Legislature may not have clearly expressed its reasoning, it has determined that sudden quarrel/heat of passion or imperfect self-defense mitigates a killing done knowingly, but knowingly is a less culpable mental state than intentionally. Under the current Kansas criminal code, there are no similar mitigating circumstances for an intentional killing. The legal effect of these changes is that when voluntary manslaughter is submitted as a lesser offense of second-degree murder, the jury is no longer required to consider the charges together. Instead, the charges are to be considered

37

sequentially, which is consistent with the usual order for juries to consider lesser offenses of other crimes. See *Parker*, 301 Kan. at 561-62. Thus, we conclude the district court did not err in Younger's case in the manner that it instructed the jury to consider voluntary manslaughter as a lesser offense of second-degree murder.

CUMULATIVE ERROR

Finally, Younger argues in the alternative that cumulative error requires reversal of his conviction. The State argues that there were no errors at trial so significant that their cumulative effect requires reversal.

When a defendant argues for reversal of a conviction based on cumulative errors, the test is whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014).

Here, we have identified only one error in the issues raised by Younger, i.e., that the district court applied an incorrect legal standard in weighing the evidence at the pretrial immunity hearing. However, this error is not a trial error and probably should not even be considered in the cumulative error analysis. In any event, a single error cannot constitute cumulative error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014). Thus, Younger's cumulative error claim fails.

Affirmed.

38

* * *

ATCHESON, J., concurring: I concur in the majority's denial of relief to Defendant David M. Younger on each of his points on appeal. But I would decide the issue of self-defense immunity under K.S.A. 2016 Supp. 21-5231 solely because any error on the part of the Kingman County District Court was harmless as a matter of law in light of the jury's verdict convicting Younger and necessarily rejecting his defense. The statutory immunity protects against the burdens of participating in the accusatory process and not against the verdict of a fact-finder that marks the transformation of the accusation into a judgment of guilty or not guilty.

The limited scope of the immunity is apparent from the language defining it in K.S.A. 2016 Supp. 21-5231. The Kansas Supreme Court has also recognized the limitation in *State v. Hardy*, 305 Kan. 1001, 1009, 390 P.3d 30 (2017), and *State v. Ultreras*, 296 Kan. 828, 846-47, 295 P.3d 1020 (2013). In K.S.A. 2016 Supp. 21-5231(a), the Legislature adopted an immunity for persons using self-defense from "criminal prosecution" defined as "arrest, detention in custody[,] and charging or prosecution of the defendant." Apart from pretrial detention, those are specific steps in the criminal justice process through which the State accuses an individual of wrongdoing. Conspicuously missing from the statute is language affording immunity from conviction or punishment.

In *Hardy*, the court recognized that the immunity granted in K.S.A. 2016 Supp. 21-5231(a) differs from a defense to criminal liability and insulates against the initiation or continuation of the accusatory process. 305 Kan. at 1009. The court pointed out that the immunity should be asserted and resolved "as early in the process as possible to fully vindicate the statutory guarantee." 305 Kan. at 1012. And because the immunity aims at "'arrest and prosecution,'" its protection "'is effectively lost if a case is erroneously permitted to go to trial.'" 305 Kan. at 1009. If a district court erroneously denies self-defense immunity—as Younger contends here—and a defendant winds up in trial, the

39

accusatory process has run its course. The statutory immunity can no longer serve its stated purpose, since it does not shield a defendant against the consequences of a trial in the form of a potentially adverse verdict.

The court's earlier decision in *Ultreras* is fully consistent with that construction of the immunity in K.S.A. 2016 Supp. 21-5231(a). In hearing a motion for self-defense immunity in that case, the district court incorrectly required the defendant to prove his entitlement to immunity rather than imposing the burden on the State to establish probable cause to believe the defendant acted other than in self-defense. The defendant later went to trial and presented his self-defense evidence to the jury. The jury convicted him of aggravated battery and, thus, necessarily concluded his evidence failed to create a reasonable doubt as to his guilt. On appeal, the court held the denial of the pretrial motion for immunity based on self-defense was harmless because the jury rejected self-defense using a standard more favorable to the defendant than the district court properly would have applied in ruling on the motion. *Ultreras*, 296 Kan. at 845-46.

That result is correct only if the immunity in K.S.A. 2016 Supp. 21-5231(a) does not extend to a jury verdict adverse to the defendant. If the immunity were that expansive, the *Ultreras* court should have remanded to the district court to reconsider the defendant's immunity motion using the proper evidentiary standard. Here, we face what is functionally the same sort of error insofar as the district court imposed an evidentiary standard too favorable to the State in denying Younger's motion for self-defense immunity. But the jury's guilty verdict rendered the district court's error harmless, as in *Ultreras*. The jurors rejected self-defense using a standard more favorable to Younger than the district court should have applied in ruling on the motion. I would reject Younger's point on appeal for that reason alone.

The outcome conforms to K.S.A. 2016 Supp. 21-5231(a). Had the Legislature intended that immunity to shield against guilty verdicts not only would it have included

40

language to that effect in the statute, it would have afforded defendants the right to an interlocutory appeal from a district court ruling denying immunity. An interlocutory appeal would allow defendants to test the legal adequacy of the district court's denial rather than going to trial. The Legislature, however, has determined that an unreviewable decision from a district court following an evidentiary hearing sufficiently secures a defendant's right to the immunity created in K.S.A. 2016 Supp. 21-5231(a)—an approach that may be viewed as especially appropriate if the immunity protects against the burdens imposed by the accusatory process rather than by an adverse jury verdict. An interlocutory appeal would only multiply and prolong the accusatory process and the concomitant burdens.[*]

[*]The State may appeal a district court ruling granting a defendant's motion for self-defense immunity. The ruling results in the dismissal of the charging instrument. As provided in K.S.A. 2016 Supp. 22-3602(b)(1), the State may appeal from any district court order dismissing a complaint, information, or grand jury indictment. Under K.S.A. 2016 Supp. 22-3602(b)(1), the State also can appeal from a dismissal based on insufficient evidence to bind a defendant over for trial following a preliminary hearing. Conversely, a defendant may not appeal a district court's decision to bind over and cannot assert the insufficiency of evidence or some other judicial mistake at the preliminary hearing as reversible error on appeal following a conviction at trial. See *State v. Jones*, 290 Kan. 373, 381, 228 P.3d 394 (2010) ("As a general principle, after an accused has gone to trial and has been found guilty beyond a reasonable doubt, any error at the preliminary hearing stage is considered harmless unless it appears that the error caused prejudice at trial."). In that respect, the statutory immunity operates similarly to a defendant's right to a probable cause hearing.