(34 P.3d 76)

No. 84,524

STATE OF KANSAS, *Appellee*, v. DAMONE L. CRIBBS, *Appellant*.

Opinion filed November 9, 2001.

*Rebecca E. Woodman* and *Jennifer C. Roth*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant, and *Damone Cribbs*, appellant pro se.

*Michael A. Russell*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before PIERRON, P.J., MARQUARDT and BEIER, JJ.

BEIER, J.: Damone Lee Cribbs appeals his jury convictions for attempted second-degree murder and criminal possession of a firearm and his sentence on the attempted second-degree murder charge. He takes issue with two jury instructions, the sufficiency of the evidence on criminal possession of a firearm, the voluntariness of his statements to police, and his sentence's compliance with the Eighth Amendment prohibition of cruel and unusual punishment.

This case arose out of a bloody confrontation just after midnight on New Year's Day 1999 between Cribbs and Angela Jones, a woman with whom he had been living. Jones' three children and one grandchild also lived in the same apartment.

Patrick Hert, who was living one floor up in the same apartment building at the time, testified that Jones knocked on his door after a midnight celebration of the new year. She dropped a bag of clothes on the floor and left. About 10 minutes later, Hert heard sounds of wrestling followed by three gunshots coming from the hall. When he investigated, he saw Jones lying on the second floor landing with blood around her head.

Jones' son, Dwight, testified that he had seen Cribbs shooting a gun at the New Year's celebration outside their apartment, and he had not seen Jones doing likewise. After Cribbs left and Dwight went inside, Jones received a phone call. Dwight heard Jones say, "[M]other F"er, you're playing me" and telling the person to whom she was speaking that she would throw his clothes out. Dwight testified that his mother then took Cribbs' clothes upstairs.

Dwight also testified that he saw Cribbs shoot his mother. He said Cribbs passed Jones on the stairs and knocked on a door and said, "[M]other F"er, give me my stuff and take it back down there." When Jones said no, Cribbs pulled a gun out of his pocket, pointed it at her, and said, "[M]other F"er, I'll shoot you." Jones replied, "No, you won't," and Cribbs shot her, causing her to fall over the rail and to the ground. Dwight also testified that there were three shots. Cribbs then dropped the gun, walked halfway to the door, went back to grab the gun, and ran out of the building. Dwight ran back into the apartment and called his uncle and told him that Cribbs had shot his mother. His uncle verified the fact of this phone conversation during his testimony at trial.

Cribbs took the stand in his own defense. He testified he spent most of New Year's Eve drinking and "doing" marijuana and cocaine. He returned to the apartment he shared with Jones and the children about 11 p.m., and he, Jones, Dwight, and one of the other children went outside to shoot a gun with other people doing the same. He said that, when he returned to the apartment about 1 a.m., he saw the gun on a dresser and told Jones she needed to

put it away. He then left again to talk with one of the children. When he returned, he ran into Willie Brownlee. Brownlee told him Jones was cussing about him leaving and had a gun in her pocket.

Cribbs said he then saw Jones standing at the top of the stairs with a gun in her hand. He rushed her to get the gun out of her hand, and both of them slammed against the walls in the process. He then tried to throw her down the stairs to break her grip on the gun and kept himself from falling with her by using his foot. When he finally was able to grab the gun from her, it went off. Jones then fell down the stairs. Cribbs ran out of the building and drove away when he saw Jones lying in a puddle of blood.

Police found four apparently fresh bullet holes at the scene. Detectives Randall Eskina and Richard Nepote and Officer Christopher McAlister all testified that three of the holes were consistent with a gun being fired by someone lower on the stairs shooting upward.

Cribbs' amended information contained a first count of attempted first-degree murder and a second count of criminal possession of a firearm. The second count included the following language:

"[O]n or about the 1st day of January, 1999, one **Damone L. Cribbs** did at and within the above named county and state unlawfully, feloniously, knowingly and willfully possess a firearm, having been released from imprisonment within the preceding 5 years of a felony, to wit: Attempted Aggravated Assault, in violation of K.S.A. 21-3410, and in the case leading to said earlier conviction was found to have used a firearm during the commission of the crime, all in violation of K.S.A. 21-4204. (Criminal Possession of a Firearm, Severity Level 8, Non-person Felony.)"

Police arrested Cribbs approximately a week after the crimes at his cousin's home in Missouri. Cribbs said he had spent the morning of his arrest until about 10 minutes before the officers arrived smoking marijuana and freebasing crack cocaine. Cribbs said he was still high and jittery while talking to officers, "having illusions of what was going on in my mind as far as the situation that they was talking to me . . . about." He remembered signing something but said he did not know what he had signed. He also testified

that he had wanted to wait to tape record his statement until he was in Kansas, but detectives told him they could not wait. Cribbs was able to remember certain other details of the day and the interview, including the fact that officers who came to the door were with the Apprehension Unit.

One of the officers who took Cribbs' statement testified that he went over an advice of rights and waiver form with Cribbs before it was signed. He also said that, although Cribbs stuttered when he got nervous and cried during part of the interview, he appeared to be sober, was not glassy eyed, did not slur his speech, and had normal balance. The detective did not smell any intoxicants, and Cribbs did not admit to any drug use that day. According to the detective, Cribbs did not say that he wanted to give his statement in Kansas, did not request a lawyer, and did not say he did not understand the questions.

The district court denied Cribbs' motion to suppress his statement, concluding it was voluntary, willful, and knowing.

At trial, the defense did not object to the jury instructions given on attempted first-degree murder or on the lesser included offenses of attempted second-degree murder, attempted voluntary manslaughter, and aggravated battery.

The attempted voluntary manslaughter instruction read:

"If you do not agree that the defendant is guilty of the crime of an attempt to commit the crime of murder in the second degree, you should then consider the lesser included offense of an attempt to commit the crime of voluntary manslaughter.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant performed an act toward the commission of the crime of voluntary manslaughter.

"2. That the defendant did so with the intent to commit the crime of voluntary manslaughter;

"3. That the defendant failed to complete commission of the crime of voluntary manslaughter; and

"4. That this act occurred on or about the 1st day of January, 1999, in Wyandotte County, Kansas.

"The elements of voluntary manslaughter are as follows:

"1. That the defendant intentionally killed Angela Jones,

"2. That it was done upon a sudden quarrel or in the heat of passion; and

"3. That this act occurred on or about the 1st day of January, 1999, in Wyandotte County, Kansas."

## The instruction on criminal possession of a firearm read:

"In Count II, for a further, different and second count herein, the defendant is charged with criminal possession of a firearm. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. That the defendant knowingly had possession of a firearm;
"2. That the defendant had been convicted of attempted aggravated assault, a person felony; and
"3. That this act occurred on or about the 1[st] day of January, 1999, in Wyandotte County, Kansas."

After Cribbs' convictions, the district judge denied Cribbs' motion seeking to replace the attempted second-degree murder conviction with a conviction of attempted voluntary manslaughter.

Cribbs also filed a motion for a downward departure in sentencing, arguing that the presumptive sentence for attempted second-degree murder constituted cruel and unusual punishment. The district judge denied the motion and sentenced Cribbs to concurrent terms of 340 months and 8 months on the two convictions.

*Jury Instruction on Attempted Voluntary Manslaughter*

Defendant argues that the attempted voluntary manslaughter instruction was clearly erroneous because it shifted the burden to the defense to prove that the shooting happened in the heat of passion or a sudden quarrel. Defendant also contends the district judge failed to give the proper PIK instruction for situations when attempted voluntary manslaughter is a lesser included offense. "Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

Cribbs' instruction on attempted voluntary manslaughter was based in part on Alternative A of the voluntary manslaughter instruction in PIK Crim. 3d 56.05. The Notes on Use for this instruction state: "When voluntary manslaughter is submitted to the jury as a lesser offense of the crime charged under K.S.A. 21-3107(2)(a), use alternative B." Alternative B differs from the modified Alter-

native A used here because it would have instructed the jury to consider the possibility of convicting on the lesser included offense *as it deliberated* on the greater. It reads in pertinent part:

"In determining whether the defendant is guilty of murder in the second degree, you should also consider the lesser offense of voluntary manslaughter. Voluntary manslaughter is an intentional killing done (upon a sudden quarrel) (in the heat of passion) . . . .

"If you decide the defendant intentionally killed, _____, but that it was done (upon a sudden quarrel) (in the heat of passion) . . . the defendant may be convicted of voluntary manslaughter only." PIK Crim. 3d 56.05.

The district court erred by employing Alternative A rather than Alternative B. In essence, Cribbs' jury was told that it need not bother considering attempted voluntary manslaughter unless and until it failed to agree on his guilt of attempted second-degree murder. It may never have fully analyzed whether the shooting was the product of heat of passion or a sudden quarrel, the factors that distinguish the greater and the lesser crimes and the reasons they require simultaneous deliberation when the evidence could support either.

The next question is whether we are firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. The State urges us to focus on the additional instruction telling Cribbs' jury: "When there is a reasonable doubt as to which of two or more offenses the defendant is guilty, he may be convicted of the lesser offense only." In our view, however, this instruction was insufficient to cure the error, because it still made any consideration of attempted voluntary manslaughter contingent on the jury's prior inability to convict on attempted second-degree murder. On the facts of this case, especially those regarding Cribbs' and Jones' relationship and quarrel, this basic reordering of the jury's decision-making process merits the "clearly erroneous" label and requires reversal of the attempted second-degree murder conviction.

### *Jury Instruction on Criminal Possession of Firearm*

Cribbs attacks this instruction on two fronts. First, he contends the district court lacked jurisdiction because the information

charged a nonexistent form of the crime; thus the instruction should have been omitted. Second, he contends that, even if the information was sufficient, the court instructed the jury on a version of the crime different from the one charged in the complaint.

In *Roach v. State*, 27 Kan. App. 2d 561, 7 P.3d 319, *rev. denied* 270 Kan. 899 (2000), this court considered the sufficiency of an information to confer jurisdiction in an aggravated robbery case. In *Roach*, the charging document did not include language that the property was taken by force or threat of bodily harm. In finding the court had jurisdiction, this court first noted the following holding of our Supreme Court:

> " 'The sufficiency of the charging document is measured by whether it contains the elements of the offense intended to be charged, sufficiently apprises the defendant of what he or she must be prepared to meet, and is specific enough to make a subsequent plea of double jeopardy possible. The charging document is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or words of the same import. [Citations omitted.]' " 27 Kan. App. 2d at 567 (quoting *State v. Smith*, 268 Kan. 222, 226-27, 993 P.2d 1213 [1999]).

In *Roach*, the defendant had not alleged that he was less than fully informed of the charges or that the factual allegations were insufficient to support his conviction. The court found the requirement that the charging document include all of the elements of the offense was satisfied by its factual allegations, including a necessary implication that force or fear was employed through the use of a dangerous weapon. The court also was persuaded that no one would have had a doubt as to which crime the State was charging. 27 Kan. App. 2d at 566-68.

K.S.A. 2000 Supp. 21-4204(a)(2) defines criminal possession of a firearm in relevant part as "possession of any firearm by a person who has been convicted of a person felony . . . and [who] was found to have been in possession of a firearm at the time of the commission of the offense." K.S.A. 2000 Supp. 21-4204(a)(3) outlines another form of the same crime: "[P]ossession of any firearm by a person who, within the preceding five years has been convicted of a felony . . . and was found not to have been in possession of a firearm at the time of the commission of the offense."

Cribbs is correct that the second count of his information appears to have combined elements from K.S.A. 2000 Supp. 21-4204(a)(2) and (a)(3). All of the elements of (a)(2) are present except that the prior crime is not explicitly described as a "person" felony. This does not trouble us, however, because its "person" classification is obvious from its name: attempted aggravated assault. The language "within the preceding 5 years" is mere surplusage. Cribbs does not contend—and could not contend successfully—that the State failed to inform him of the charge against him. Under *Smith*, the information contained the elements of the offense intended to be charged, sufficiently apprised the defendant of what he must be prepared to meet, and was specific enough to make a subsequent plea of double jeopardy possible.

Cribbs' second argument regarding the instruction on criminal possession of a firearm is that it improperly omitted the element "[t]hat the defendant was found to have been in possession of a firearm at the time of the commission of the prior (person felony)" found in the 1999 version of PIK Crim. 3d 64.06. Again, because there was no defense objection, we must find the instruction was clearly erroneous before reversal would be warranted. *State v. Duke*, 256 Kan. 703, Syl. ¶ 7, 887 P.2d 110 (1994).

Defendant stipulated to his identity in the prior crime, and he did not dispute the State's evidence that he had been convicted of an attempted aggravated assault during which he used a gun. Under these circumstances, any omission in the instruction was not "clearly erroneous."

### Sufficiency of the Evidence

Cribbs next questions the sufficiency of the evidence to support his criminal possession of a firearm conviction. Specifically, he alleges there was no evidence that his prior crime involved use of a gun.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000).

Terra Morehead, a Wyandotte County assistant district attorney, testified that Cribbs was convicted of attempted aggravated assault and criminal possession of a firearm in 1996 and that the assault was committed with a .357 Magnum revolver. This evidence supported Cribbs' firearm conviction in this case.

### Voluntariness of Statement

Cribbs' final argument on appeal is that he was entitled to suppression of his statement to police because it was involuntary. He points to the evidence that he was under the influence of alcohol and drugs at the time of his interrogation.

"Voluntariness of a confession is determined from the totality of the circumstances, and where a trial court conducts a full prehearing on the admissibility of extrajudicial statements by the accused, determines the statements were freely and voluntarily given, and admits the statements into evidence at trial, appellate courts accept that determination if supported by substantial competent evidence and do not attempt to reweigh the evidence." *State v. Hedges*, 269 Kan. 895, 908, 8 P.3d 1259 (2000).

" 'The fact that an accused had been drinking and using drugs does not per se establish involuntariness.' " *State v. Norris*, 244 Kan. 326, 334-35, 768 P.2d 296 (1989) (quoting *State v. Baker*, 4 Kan. App. 2d 340, 343, 606 P.2d 120 [1980]).

Here, under the totality of the circumstances, substantial competent evidence supported the district court's finding of voluntariness. The detective conducting the interrogation testified Cribbs appeared to be sober, was not glassy eyed, did not slur his speech, and had normal balance. The officer did not smell alcohol. Furthermore, Cribbs told primarily the same version of events he later testified to at trial and he remembered details that would have escaped a person made senseless by intoxicants.

### Eighth Amendment

Cribbs' Eighth Amendment issue regarding his sentence on the attempted second-degree murder conviction is moot in view of our reversal of that conviction.

Affirmed in part, reversed in part, and remanded for a new trial on no greater charge than attempted second-degree murder. See K.S.A. 21-3108(1)(c); *State v. Carpenter*, 228 Kan. 115, 117, 612 P.2d 163 (1980) (finding defendant cannot be tried second time upon greater than the underlying conviction in first trial).