No. 100,247

STATE OF KANSAS, *Appellee*, v. XAVIER MILLER, *Appellant*.

(259 P.3d 701)

Opinion filed September 2, 2011.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, assistant district attorney, argued the cause, and *John Bryant*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: In this appeal, we granted review of the Court of Appeals' decision affirming Xavier Miller's conviction of intentional second-degree murder. *State v. Miller*, No. 100,247, 2009 WL 1591572 (Kan. App. 2009) (unpublished opinion). The issue presented on review is whether the district court clearly erred when it appropriately instructed the jury that it should simultaneously consider the lesser included offenses of second-degree murder and voluntary manslaughter, but then erroneously gave a contradictory instruction directing the jury to consider the offense of voluntary manslaughter only if it could not agree on the offense of second-degree murder. Because we find there is a real possibility the jury would have rendered a different verdict had it not received the inappropriate and contradictory instruction advising it to consider the lesser included offenses sequentially, we reverse the Court of Appeals' decision affirming Miller's conviction, reverse Miller's conviction and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2007, Xavier Miller, Shawnte Holliday, Andre Chapman, and August Peeler gathered at Peeler's apartment in Kansas City, Kansas, to celebrate Holliday's birthday. Peeler's son, who was also Miller's child, and Peeler's daughter were also present in the apartment. At some point in the evening, Chapman, Miller, and Peeler left the apartment, and Holliday's boyfriend, Brandon Estis, arrived. Miller, Peeler, Chapman, and Articulus Watson, Miller's cousin, returned to the apartment to find Estis choking Holliday, who was on the floor. Estis told everyone to leave and lifted up his shirt, revealing a revolver. Miller, Chapman, and Watson

eventually left. Estis left shortly thereafter, followed by Holliday. Approximately 30 minutes to an hour later, Miller and Watson returned so Miller could check on Peeler and the couple's son.

Miller testified in his own defense at trial, and the following summary of the events of the evening is derived from Miller's testimony.

As Miller and Watson drove into the apartment complex parking lot, Miller saw Estis' car. From the parking lot, Miller telephoned Estis and asked why he was still there. Estis responded, "[B]itch ass nigga, what you mean what I still doing out here? Where you at?" Miller asked Estis where he was, and Estis said, "I'm right here." Estis then got out of his car in the parking lot and started walking toward Miller. Miller was scared because he knew Estis had a gun.

Miller borrowed a semiautomatic handgun from someone he knew only as "JJ," who was standing nearby. As Miller started walking toward Estis, Estis pointed his gun at Miller, and Miller began firing his gun. According to Miller, he shot Estis twice. One of his shots made Estis' arm flinch and caused Estis to fling his gun to the ground.

Estis then started stumbling toward the gun, attempting to retrieve it. Miller realized his gun was out of bullets so he ran to Estis' gun, picked it up, and shot Estis twice in the head.

The State charged Miller with premeditated first-degree murder. Although the record contains no discussion of the basis for giving lesser included offense instructions, the district court instructed the jury on the lesser included offenses of second-degree murder and voluntary manslaughter in addition to premeditated first-degree murder. Those instructions provided:

"Number eight. If you do not agree that the defendant is guilty of Murder in the First Degree, you should then consider the lesser offense of Murder in the Second Degree.

"To establish this charge, each of the following claims must be proved:

1. That the defendant intentionally killed Brandon Estis; and

2. That this act occurred on or about the 13th day of June, 2007, in Wyandotte County, Kansas.

"Instruction number nine. In determining whether the defendant is guilty of Murder in the Second Degree, you should also consider the lesser offense of

Voluntary Manslaughter. Voluntary Manslaughter is an intentional killing done upon a sudden quarrel or in the heat of passion or upon—or upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person.

"If you decide the defendant intentionally killed Brandon Estis, but that it was done upon a sudden quarrel or in the heat of passion or upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person, the defendant may be convicted of Voluntary Manslaughter only.

"Number 10. If you do not agree the defendant is guilty of Murder in the Second Degree, you should then consider the lesser included offense of Voluntary Manslaughter.

"To establish this charge, each of the following claims must be proved:
1. That the defendant intentionally killed Brandon Estis;
2. That it was done:
    a) Upon a sudden quarrel; or
    b) In the heat of passion; or
    c) Upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person; and
3. That this act occurred on or about the 13th day of June, 2007, in Wyandotte County, Kansas."

The jury convicted Miller of second-degree murder. Miller appealed his conviction, and the Court of Appeals affirmed in part and dismissed in part. *Miller*, 2009 WL 1591572, at *7. We granted Miller's petition for review.

## ANALYSIS

In his appeal to the Court of Appeals and in his petition for review to this court, Miller challenges the instructions given to the jury regarding lesser included offenses. In particular, Miller claims that Instructions Nos. 9 and 10 inconsistently advised the jury regarding the order in which it was to consider the lesser included offenses. Consequently, Miller argues the jury may not have considered whether he was guilty of voluntary manslaughter instead of the offense of which he was convicted, second-degree murder.

Miller concedes that Instruction No. 9, which mirrored PIK Crim. 3d 56.05, Alternative B, properly directed the jury to simultaneously consider the lesser included offenses of second-degree murder and voluntary manslaughter. That instruction stated in relevant part: "In determining whether the defendant is guilty of murder in the second degree, you should also consider the lesser

offense of voluntary manslaughter." But Miller argues the jury was then incorrectly advised in Instruction No. 10 to consider the lesser offenses sequentially. That instruction, which was based in part on PIK Crim. 3d 56.05, Alternative A, stated: "If you do not agree that the defendant is guilty of murder in the second degree, you should *then* consider the lesser included offense of voluntary manslaughter." (Emphasis added.)

Because Miller did not object below to the inclusion of Instruction No. 10, we apply a clearly erroneous standard on review. See K.S.A. 22-3414(3). To find an instruction clearly erroneous, we must be convinced there is a real possibility the jury would have rendered a different verdict had the jury been properly instructed. *State v. Graham*, 275 Kan. 831, Syl. ¶ 2, 69 P.3d 563 (2003).

As Miller points out, the alternative PIK instructions are designated as "alternative" instructions for a reason—they were not intended to be given together. Rather, as the "Notes on Use" accompanying PIK Crim. 3d 56.05 clarifies, Alternative A should be used if the information charges voluntary manslaughter, while Alternative B should be used when voluntary manslaughter is submitted to the jury as a lesser included offense of the crime charged. Here, the crime of voluntary manslaughter was submitted to the jury as a lesser included offense of the charged crime of first-degree murder. Thus, only Instruction No. 9, which was based on Alternative B, should have been given to the jury in this case, and the district court erred in also giving Instruction No. 10.

Before considering whether this was clearly erroneous, we note that the State urges us to affirm the Court of Appeals' decision based upon our holding in *State v. Abu-Fakher*, 274 Kan. 584, 609, 56 P.3d 166 (2002). There, as here, voluntary manslaughter was submitted as a lesser offense of the crime charged; thus, PIK Crim. 3d 56.05, Alternative B, was the appropriate instruction. But in *Abu-Fakher*, instead of giving both instructions, the district court fashioned its own instruction using Alternative B but appended it to a portion of Alternative A.

However, the improvised instruction at issue in *Abu-Fakher* did not contain any language instructing the jury to consider voluntary manslaughter only if it could not agree as to the defendant's guilt

on the second-degree murder charge. In fact, the court specifically noted that the instruction did not preclude the jury from simultaneously considering the lesser included offense of voluntary manslaughter. Rather, the issue in *Abu-Fakher* was whether the improvised instruction improperly shifted the burden to the defendant to prove mitigating circumstances, which the court held it did not. 274 Kan. at 609. Thus, *Abu-Fakher* has no significance in our analysis of this case.

In considering whether the instructional error requires reversal in this case, Miller urges us to rely on *Graham*, 275 Kan. 831. There, although the defendant was not charged with attempted voluntary manslaughter, the district court instructed the jury using Alternative A instead of Alternative B. This court found this "reordering" of the jury's decision-making process deprived the jury of the opportunity to consider the mitigating circumstances of heat of passion or sudden quarrel that reduce an intentional homicide from murder to voluntary manslaughter. 275 Kan. at 837. The court reasoned:

"Both second degree-murder [*sic*] and voluntary manslaughter are intentional killings. An intentional homicide is reduced from murder to voluntary manslaughter if it is committed upon a sudden quarrel or in the heat of passion under K.S.A. 21-3403(a). Where the homicide is intentional and there is some evidence the homicide was committed under the mitigating circumstances contained in K.S.A. 21-3403(a), the appropriate voluntary manslaughter instruction should be considered by the jury during its consideration of second-degree intentional murder. Thus, where there is evidence of mitigating circumstances justifying an instruction on voluntary manslaughter in a case where voluntary manslaughter is a lesser included offense, a failure to instruct the jury to consider such circumstances in its determination of whether the defendant is guilty of second-degree murder, is always error—and in most cases—presents a case of clear error." 275 Kan. at 837.

The *Graham* court found this error was compounded when the district court instructed the jury that " 'when there is a reasonable doubt as to which of two or more offenses the defendant is guilty, he may be convicted of the lesser offense only.' " 275 Kan. at 840. The court concluded this instruction sent a message to the jury that if it found the defendant guilty of attempted second-degree murder it need not consider attempted voluntary manslaughter. 275 Kan. at 840.

*Graham* relied upon a factually similar case, *State v. Cribbs*, 29 Kan. App. 2d 919, 34 P.3d 76 (2001), in which the district court erroneously instructed the jury using PIK Crim. 3d 56.05, Alternative A, rather than Alternative B, although the defendant was not charged with attempted voluntary manslaughter. The Court of Appeals panel in *Cribbs* found that the instruction told the jury, in essence, it "need not bother" to consider attempted voluntary manslaughter unless and until it failed to agree on defendant's guilt of attempted second-degree murder. 29 Kan. App. 2d at 924. Thus, the panel recognized that the jury "may never have fully analyzed whether the shooting was the product of heat of passion or a sudden quarrel, the factors that distinguish the greater and the lesser crimes and the reasons they require simultaneous deliberation when the evidence could support either." 29 Kan. App. 2d at 924.

The *Cribbs* panel concluded the error was clearly erroneous and, like this court in *Graham*, was not swayed by the "reasonable doubt" instruction given the jury. As the panel observed: "[T]his instruction was insufficient to cure the error, because it still made any consideration of attempted voluntary manslaughter contingent on the jury's prior inability to convict on attempted second-degree murder." 29 Kan. App. 2d at 924.

The State argues, as it did before the Court of Appeals, that *Graham* and *Cribbs* are distinguishable because the jury in this case received *both* the applicable PIK Crim. 3d 56.05, Alternative B, instruction and the inapplicable PIK Crim. 3d 56.05, Alternative A, instruction. The Court of Appeals agreed and concluded that the instructions "as a whole" properly stated the law. *Miller*, 2009 WL 1591572, at *5. However, the panel's conclusion is problematic:

"The jury was instructed to consider second-degree murder and voluntary manslaughter simultaneously, to convict of the lesser offense only if there was a reasonable doubt as to which of one or more offenses the defendant was guilty, *and to refrain from singling out one or more instructions and disregarding others.* Based on these facts, we find no real possibility the jury would have rendered a different verdict in the absence of Instruction No. 10 and thus no clear error in the district court's decision to instruct the jury on voluntary manslaughter using both alternative A and alternative B of PIK Crim. 3d 56.05." (Emphasis added.) *Miller*, 2009 WL 1591572, at *5.

Ironically, in concluding that the instructions "as a whole" properly and fairly stated the law, the Court of Appeals panel did not mention the instruction at issue in this case—*i.e.*, the instruction that required the jury to sequentially consider the lesser offenses of second-degree murder and voluntary manslaughter. Yet that instruction was entirely contradictory to the instruction advising the jury to consider the crimes simultaneously. Thus, in order to properly and fairly apply the instructions, the jury would have been required to do exactly what it had been instructed not to do—to *disregard* the instruction advising it to consider the crimes sequentially and *single out* the instruction directing it to consider the crimes simultaneously.

The same faulty analysis underlies the State's suggestion at oral argument that we should presume the jury followed the correct instruction and disregarded the improper instruction directing it to sequentially consider the two offenses.

Further, as both *Graham* and *Cribbs* recognized, the reasonable doubt instruction relied upon here by the Court of Appeals as support for its conclusion that the jury properly applied the instructions actually may have enhanced the error. If the jury chose to consider the crimes sequentially rather than simultaneously (that is, to follow Instruction No. 10 instead of Instruction No. 9), it may have found the defendant guilty of the lesser included offense of second-degree murder without ever considering voluntary manslaughter. The "reasonable doubt" instruction did not indicate to the jury that it was to consider the lesser offenses simultaneously—rather, it instructed the jury that if reasonable doubt existed as to "which of one or more offense[s] the defendant is guilty, he may be convicted of the lesser offense *only*." (Emphasis added.)

Although not discussed by either party, our review of the entirety of the record leads us to conclude that if any presumption is to be made, it would be more logical to presume the jury followed the instruction to sequentially consider the offenses. Significantly, neither attorney explained to the jury in closing argument that it should consider the lesser included offenses simultaneously. Instead, both the prosecutor and defense counsel separately discussed first-degree murder, second-degree murder, and voluntary

manslaughter in that order, implying that the crimes should be considered sequentially.

Moreover, the verdict form, which sequentially listed first-degree murder, second-degree murder, and then voluntary manslaughter, did nothing to clarify the contradictory instructions and more likely led the jury to consider the offenses sequentially.

We conclude under the facts of this case, that when the jury was given contradictory instructions to consider the lesser included offenses of second-degree murder and voluntary manslaughter both sequentially under a modified form of PIK Crim. 3d 56.05, Alternative A, and simultaneously under PIK Crim. 3d 56.05, Alternative B, and the remaining instructions, closing argument, and verdict form also led the jury to consider the lesser offenses sequentially rather than simultaneously, a real possibility exists that the jury would have rendered a different verdict had it been properly instructed. Therefore, we reverse the Court of Appeals' decision affirming Miller's conviction of second-degree murder, reverse Miller's conviction, and remand for a new trial.

Finally, we note that Miller raised two sentencing issues in his petition for review. In light of our decision remanding this case for a new trial, those remaining arguments are moot.

Reversed and remanded.