NOT DESIGNATED FOR PUBLICATION

No. 125,745

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MISTY MARIE LAKE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Oral argument held March 5, 2024. Opinion filed May 10, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GREEN, P.J., HILL and CLINE, JJ.


PER CURIAM: Misty Marie Lake challenges her criminal conviction for knowing aggravated battery on appeal because she does not believe she received a fair trial. She contends the district court should have given additional jury instructions and the prosecutor misstated facts and the law during closing arguments. While we find two discrete errors occurred during Lake's trial, we are not persuaded that these errors impacted the outcome. We therefore affirm her conviction.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2021, Lake and her daughter, Shayleigh Kabance, went out for drinks with some friends to celebrate the life of a coworker who had passed away. While they were out, Kabance posted photos on social media and exchanged text messages with Trinity Carey. Trinity and Kabance knew each other because they had gone to school together.

Trinity sent Kabance's photos and messages to Trinity's sister, Vanity Carey. Kabance and Vanity were feuding over men at the time, so Trinity and Vanity were upset that their cousin, who was out with Lake and Kabance and depicted in some of Kabance's photos, was hanging out with Kabance.

The text fight escalated and, at one point, Kabance told Trinity to "pull up" to the bar where Lake, Kabance, and their friends were celebrating. Trinity did just that, bringing Vanity and another friend along. Trinity claimed none of them had weapons. And Vanity said she did not want to fight Kabance but went to end the drama between them.

After the women met up at the bar, Vanity asked Kabance to go outside with her. All the women in both groups then headed outside. One of the witnesses reported there was a group of 10 to 15 people in the parking lot when the women got outside.

As they were leaving the bar, Kabance punched Vanity. The two then started fist fighting in the parking lot. Neither of the women had a weapon, but they were rolling around on the ground hitting each other. Trinity claimed she jumped in to try to break up the fight after Vanity said she wanted it to stop. Kabance said Trinity got onto her back and then kicked her in the face.

2

A few minutes into the fight, Lake pulled a handgun out of her bag. Lake yelled, "[Y]ou're not going to jump my daughter." She pointed the gun at Trinity and a few others before shooting it several times into the air and at cars in the parking lot. At some point, Lake shot Vanity in the stomach. Once Vanity realized she had been shot, she asked Lake if she shot her. Vanity testified that Lake responded with, "'Yup.'"

After Vanity was shot, Kabance ran across the parking lot towards her vehicle. At some point before she reached her vehicle, she claimed a few men who were in the parking lot got involved and started fighting her. Kabance said while she was fighting these men, one of them hit her in the back of the head with a gun. She eventually got into a vehicle with Lake, who drove away. While in the vehicle, Lake told Kabance, "I made it stop. Like we're good." Lake then told Kabance that she shot her gun in the air four times to make the fight stop.

Law enforcement responded to the scene and collected four unfired bullets and four shell casings in the parking lot. The gun was never located. The State charged Lake with aggravated battery, knowingly causing great bodily harm or disfigurement to another person, a severity level 4 person felony. At Lake's request, the jury was also instructed on the lesser included offense of reckless aggravated battery.

Lake did not testify at trial. In closing, her counsel mainly argued the State did not prove Lake was the one who shot Vanity. But defense counsel also argued that if Lake did shoot Vanity, she did not do so knowingly since the witnesses testified Lake shot the gun up in the air.

The jury found Lake guilty as charged, and the district court imposed a 42-month prison sentence.

*Did the district court err in failing to give the jury a defense of others instruction?*

Lake first argues her conviction should be overturned and she should receive a new trial because the district court did not properly instruct the jury. Lake contends the district court should have independently instructed the jury on the legal use of force in defense of another. This affirmative defense provides:

> "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force." K.S.A. 21-5222(a).

Lake did not rely on this affirmative defense, nor did she request that the jury be instructed on it at trial. Even so, she argues for the first time on appeal that the court should have interjected this defense into the trial because there was evidence to support it.

Since Lake did not request a defense of others instruction at trial, we review her arguments under a clear error standard. K.S.A. 22-3414(3). This means Lake must firmly convince us that a jury would have rendered a different verdict if the instruction had been given. *State v. Berkstresser*, 316 Kan. 597, 605, 520 P.3d 718 (2022); *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018).

Lake recognizes she has an uphill battle. The Kansas Supreme Court held in *State v. Sappington*, 285 Kan. 158, 169 P.3d 1096 (2007), and reaffirmed in *State v. Trussell*, 289 Kan. 499, 213 P.3d 1052 (2009), that a district court is not required to independently give a jury instruction that would undermine the defendant's theory of defense. *Trussell*, 289 Kan. 499, Syl. ¶ 4; *Sappington*, 285 Kan. at 165. As it explained in *Sappington*:

4

"'[I]t is fundamental to a fair trial that the accused be afforded the opportunity to present his or her theory of defense,' . . . and imposing a defense upon a defendant which is arguably inconsistent with the one upon which he completely relies—by providing the jury a defense instruction that neither party requests—is akin to denying the defendant the meaningful opportunity to present his chosen theory of defense." 285 Kan. at 165.

That said, Lake argues: (1) The court's reasoning in *Sappington* and *Trussell* is wrong and (2) the holdings in those cases are irrelevant because the court has changed the way it reviews jury instruction challenges. As we explain, Lake's analysis is flawed and she misunderstands Kansas law.

To support her point, Lake argues the court's holding in *Sappington* and *Trussell* contradicts the legal maxim in Kansas which allows a defendant to rely on inconsistent defenses. *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016). But we see no conflict. There is a difference between *allowing* a defendant to present inconsistent defenses and *imposing* that strategy upon a defendant.

Presenting inconsistent defenses to a jury is perilous—it creates confusion and can undermine credibility for all defenses. While defendants can choose to take on the risks inherent in this approach, a court cannot force them to do so. As explained in *Sappington*, imposing an inconsistent defense impinges on a defendant's "absolute" right to present their own theory of defense. See *State v. Irons*, 250 Kan. 302, 309, 827 P.2d 722 (1992) ("'It is fundamental to a fair trial to allow the accused to present his version of the events so that the jury may properly weigh the evidence and reach its verdict. The right to present one's theory of defense is absolute.'"); *State v. Lawrence*, 281 Kan. 1081, Syl. ¶ 1, 135 P.3d 1211 (2006) ("Under the state and federal constitutions, a defendant is entitled to present his or her theory of defense.").

And in situations like this one, it theoretically undermines a defendant's Fifth Amendment right against self-incrimination under the United States Constitution. Lake's

5

defense was either someone else shot Vanity or, if Lake did shoot her, she did not do so knowingly because her gun "was shot up in the air." But the defense of others theory relies on the defendant knowingly using force. By interjecting this defense into the trial, the district court would be forcing an admission on Lake that she knowingly shot the gun when her attorney expressly argued that she did not. By interjecting this defense into the trial, the district court would be forcing an admission on Lake that she knowingly shot the gun. The problem with this interjection would be exacerbated by Lake's attorney expressly arguing that she did not knowingly shoot the gun and Lake choosing not to exercise her right to testify.

Presumably Lake's counsel considered various defenses available to Lake and chose the ones she felt the jury would find the most plausible. We see no flaw in *Trussell*'s and *Sappington*'s reasoning that the district court cannot and should not usurp that choice. Besides, we are duty-bound to follow Kansas Supreme Court precedent absent some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We see no such indication.

As for her second point, Lake claims we are no longer bound by *Trussell* and *Sappington* because she argues the Kansas Supreme Court has departed from its holdings in these cases. She contends the court clarified how appellate courts should analyze jury instruction issues in *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012), and now we are to look at whether the instruction was legally and factually appropriate. She says a "defendant's theory of defense is irrelevant in determining whether an instruction is legally or factually appropriate."

Lake is correct that we must use the two-step process she describes when reviewing her jury instruction claim. But this process did not nullify the holdings in *Trussell* and *Sappington*, nor is her chosen defense irrelevant to this analysis. In fact,

since *Williams* our court has relied on *Trussell* and *Sappington* and a defendant's theory of defense several times when answering whether an unrequested jury instruction would have been legally appropriate.

One example can be found in *State v. May*, No. 123,622, 2023 WL 8868785 (Kan. App. 2023) (unpublished opinion). There, May argued the district court erred by failing to independently instruct the jury on self-defense. 2023 WL 8868785, at *7. Like Lake, May argued because the facts in his case supported giving a self-defense instruction, the court should have given it even though May did not request it. But our court found no error because a self-defense instruction would have been inconsistent with May's defense—which was that he accidentally shot the victim. Relying on *State v. Bellinger*, 47 Kan. App. 2d 776, 785, 278 P.3d 975 (2012), where we found a claim of accidental shooting undermined an assertion that the shooting was intentionally done in self-defense, we found giving a self-defense instruction would have undermined May's accidental shooting defense. *May*, 2023 WL 8868785, at *7. Thus, based on *Sappington*, we found a self-defense instruction would not have been legally appropriate in May's case. *May*, 2023 WL 8868785, at *8.

Similarly, in *State v. Pinkston*, No. 118,483, 2018 WL 6424988 (Kan. App. 2018) (unpublished opinion), we faced the same argument Lake relies on, which we rejected in *May*. Pinkston was convicted of aggravated assault after he accelerated and swerved his truck towards a man standing nearby. At trial, Pinkston denied swerving his truck towards the victim. Yet, on appeal (through the same counsel representing Lake here), he argued the district court committed reversible error by not independently giving a self-defense instruction. We disagreed, finding it was not legally appropriate based on *Trussell* and the fact that such an instruction would have undermined the defendant's chosen defense. *Pinkston*, 2018 WL 6424988, at *4; see also *State v. White*, 55 Kan. App. 2d 196, 206-07, 410 P.3d 153 (2017) (finding jury instruction inconsistent with theory of defense is not legally appropriate).

Last, while we did not mention *Trussell* or *Sappington* in *State v. Poore*, No. 105,726, 2012 WL 1524321 (Kan. App. 2012) (unpublished opinion), we echoed their reasoning:

> "On appeal, Poore argues that notwithstanding the apparent strategic decision of his trial lawyer to pick between possible defenses, the district court should have told the jury to consider both defenses, thereby injecting the very conflict and implicit undermining of credibility the trial strategy sought to avoid. Not surprisingly, Poore cites no case authority for the proposition he advances on appeal. The idea that district court judges should, on their own and without any request from counsel, instruct juries on every possible defense that might find support in the evidence is zany. The mischief the rule would cause goes far beyond that. In a large number of cases, it would simply undercut carefully planned and executed strategies based on selection of the best defense theory and the calculated exclusion of ineffective theories or ones that would materially diminish the chosen defense. Poore's argument is not only meritless but dangerous. We reject it." 2012 WL 1524321, at *2.

For these same reasons, we find a defense of others instruction was not legally appropriate in Lake's trial. Lake's attorney argued that Lake did not shoot Vanity or, if she did, she did not do so knowingly. Instructing the jury that Lake knowingly shot Vanity, but for a legal reason, would have undermined and conflicted with Lake's chosen defenses. We likewise find Lake's argument "zany" and reject it. 2012 WL 1524321, at *2.

Our Supreme Court has instructed that, if an instruction is not legally appropriate, the analysis ends there. Whether a defense of others instruction would have been factually appropriate is therefore irrelevant and we do not answer this question. *State v. Broxton*, 311 Kan. 357, 363, 461 P.3d 54 (2020). Lake is not entitled to a new trial based on the absence of this instruction.

8

*Did the district court err in failing to give the jury an instruction on how to handle the burden of proof between greater and lesser included offenses?*

Lake next argues the district court erred in failing to give a "reasonable doubt instruction as it relates to consideration of lesser-included offenses." Although Lake requested an instruction on the lesser included offense of reckless aggravated battery, she did not request an instruction to address how a jury should deliberate when it has reasonable doubt between convicting a defendant of a primary or lesser included offense. So, again, we review the failure to give this instruction for clear error. K.S.A. 22-3414(3).

At trial, the district court instructed the jury on two offenses: knowing aggravated battery and reckless aggravated battery. Jury Instruction 3, or the knowing aggravated battery instruction, read:

"INSTRUCTION 3

"The defendant is charged in Count 1 with aggravated battery. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant knowingly caused great bodily harm or disfigurement to Vanity Carey.

"2. This act occurred on or about the 27th day of March 2021, in Shawnee County, Kansas.

"A defendant acts knowingly when the defendant is aware that her conduct was reasonably certain to cause the result complained about by the State."

Jury Instruction 4, or the reckless aggravated battery instruction, read:

"INSTRUCTION 4

"If you do not agree that the State proved the defendant is guilty of aggravated battery—knowingly, you should consider the lesser included offense of aggravated battery—recklessly.

"To establish this charge, each of the following claims must be proved:

"1. The defendant recklessly caused great bodily harm or disfigurement to Vanity Carey.

"2. This act occurred on or about the 27th day of March, 2021, in Shawnee County, Kansas.

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist, or a result of the defendant's actions will follow. This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

Lake now complains that the district court failed to independently instruct the jury on the burden of proof relationship between these charges.

K.S.A. 21-5108(b) states: "When there is a reasonable doubt as to which of two or more degrees of a crime the defendant is guilty, the defendant shall be convicted of the lowest degree only." As such, Lake argues the district court erred in not giving the jury an instruction describing this aspect of the law. Lake contends PIK Crim. 4th 68.080 (2016 Supp.), the pattern jury instruction describing this legal rule, was necessary in Lake's trial. PIK Crim. 4th 68.080 reads:

"The offense of *insert principal offense charged* with which defendant is charged includes the lesser offense(s) of *insert lesser included offense or offenses*.

"You may find the defendant guilty of *insert principal offense charged*, *insert first lesser included offense*, *insert second lesser included offense*, or not guilty.

"When there is a reasonable doubt as to which of two or more offenses defendant is guilty, (he) (she) may be convicted of the lesser offense only, provided the lesser offense has been proven beyond a reasonable doubt.

"Your Presiding Juror should mark the appropriate verdict."

The State seems to concede that the district court erred in not giving this instruction but argues it was not clear error. Since we agree with Lake that the requested

10

instruction was both legally and factually appropriate, we will also direct our attention to whether the district court's failure to give it was clear—and thus reversible—error.

Lake relies on the holding in *State v. Miller*, 293 Kan. 46, 259 P.3d 701 (2011), to support her argument. In *Miller*, the defendant was charged with premeditated first-degree murder, and the jury was instructed on the lesser included offenses of second-degree murder and voluntary manslaughter. In one instruction, the jury was told to consider second-degree murder and voluntary manslaughter simultaneously. In another instruction, it was told to consider second-degree murder first. 293 Kan. at 48-49.

As the State argues, *Miller* is not terribly insightful. Although the reasonable doubt instruction Lake now raises is discussed in *Miller*, the case mainly involved the district court giving contradictory instructions. 293 Kan. at 51. As the State puts it, here: "There is no issue of inconsistent instructions on how to consider the lesser included offense, only the absence of the reasonable doubt language." We therefore agree with the State that *Miller* is irrelevant.

The Kansas Supreme Court addressed an issue like the one we have before us in *State v. Brammer*, 301 Kan. 333, 343 P.3d 75 (2015). And while it agreed that it had found the failure to give an instruction based on an older version of PIK Crim. 4th 68.080 (with nearly identical language) to be error on three prior occasions, it noted that in each case it declined to find the failure was clear error. 301 Kan. at 347 (citing *State v. Hall*, 292 Kan. 841, 858, 257 P.3d 272 [2011]; *State v. Massey*, 242 Kan. 252, 262, 747 P.2d 802 [1987]; *State v. Trujillo*, 225 Kan. 320, 323, 590 P.2d 1027 [1979]). Further, the *Brammer* court repeatedly questioned the conclusion that the failure to give the instruction was error at all. It stated none of the three cases "articulate why the instruction is required"; those cases "simply focus on the fact that it is an accurate statement of the law," and although it is "appropriate practice to give the instruction[,] . . . that does not necessarily explain why it would be error to omit it." 301 Kan. at 347. Ultimately, the

court concluded it would "keep[] with our prior caselaw" and find that the omission was not clear error despite the difficulty in "discern[ing] how the omission is error." 301 Kan. at 348.

Along with *Brammer*'s concerns about the need for the instruction (even though the instruction is legally accurate), the court found the instructions "taken as a whole" sufficiently informed the jury of the reasonable doubt standard and the rule that their decision on one charge should not influence their decision on another. 301 Kan. at 348. The court cited two instructions the district court used in Brammer's case, PIK Crim. 3d 52.02 and PIK Crim. 3d 68.07, for this determination. These two instructions read:

> "'The test you must use in determining whether the defendant is guilty or not guilty is this:  If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty.' [PIK Crim. 3d 52.02.]
> . . . .
> "'Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime must be stated in a Verdict Form signed by the Presiding Juror.' [PIK Crim. 3d 68.07.]" *Brammer*, 301 Kan. at 348.

The district court delivered nearly identical jury instructions in Lake's trial.

Despite *Brammer*'s holding that a failure to give Lake's reasonable doubt instruction is not inherently clear error, Lake still complains "the district court incorrectly gave an instruction to the jury to consider each charge as separate and distinct offenses when there was in fact only one crime charged." She argues that the failure to give this

instruction meant the jury did not consider the primary and lesser-included offenses relative to each other and instead the jury considered them separate and apart.

Lake's argument is unpersuasive. She cites no legal authority and offers only conclusory statements in support of her position, contending the failure to give this instruction "violated her due process right." But Lake does not explain the problem with the jury separately deliberating these offenses or how her due process right was violated. She also points to no evidence in the record to suggest the jury had reasonable doubt about which offense to find her guilty of—the only situation where this instruction would apply.

While in line with *Brammer* and the cases the Supreme Court cites there, it may have been error for the district court not to provide this instruction, and Lake has failed to explain why this failure was "clear error." Indeed, deliberating degrees of offenses relative to each other seems more pertinent to situations where mitigating circumstances can reduce a greater offense into a lesser one, such as when heat of passion or a sudden quarrel can reduce intentional homicide from murder to voluntary manslaughter. See *Lawrence*, 281 Kan. at 1092. But here the mens rea element between the two offenses— knowing versus reckless conduct—are different. Compare K.S.A. 21-5413(b)(1)(A) (knowing aggravated battery) with K.S.A. 21-5413(b)(2)(A) (reckless aggravated battery). So, again, we fail to see how the failure to further instruct the jury on giving Lake the benefit of the doubt prejudiced their deliberations or the outcome.

The jury instructions on Lake's presumption of innocence and the State's burden to prove her guilt beyond a reasonable doubt applied to each element of each offense. In viewing the instructions as a whole, as we are bound to do, the jury was essentially told to convict Lake of no greater offense than they believed her guilty of. See *State v. Sims*, 308 Kan. 1488, 1505, 431 P.3d 288 (2018) ("We do not review jury instructions in

isolation; we consider all the instructions together as a whole."). She has failed to show why an instruction on reasonable doubt between the two offenses impacted the verdict.

The jury convicted Lake of knowing aggravated battery. If the jury had a reasonable doubt about whether Lake was guilty of knowing aggravated battery, they were bound to find her not guilty of that offense, as instructed. The verdict form clarified the options the jury had before it, and Lake points to no evidence that the jury did not consider all these options before returning a verdict.

Since the instructions otherwise properly and fairly stated the law as applied to the facts, and Lake has not shown the jury could have reasonably been misled by them, she has failed to firmly convince us that the jury would have reached a different verdict had the instruction been given. See *State v. Sisson*, 302 Kan. 123, 130, 351 P.3d 1235 (2015) ("'If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous.'"). We again find Lake is not entitled to a new trial based on the absence of this instruction.

*Did the prosecutor misstate facts and law in closing arguments and commit reversible error?*

Lake also argues she is entitled to a new trial because the prosecutor made a misstatement of fact and a misstatement of law in her closing argument. Although Lake's counsel did not object to either of these statements, appellate courts can still review a prosecutor's alleged error during closing argument to determine whether the comments prejudiced the trial. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018); *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012).

We review Lake's claim of prosecutorial error using a two-step test:

> "To determine whether prosecutorial error has occurred, this court considers whether the challenged prosecutorial acts 'fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.' If error is found, this court then determines whether that error prejudiced the defendant's right to a fair trial by considering whether the State can prove beyond a reasonable doubt that the error did not contribute to the verdict. [Citation omitted.]" *State v. Anderson*, 318 Kan. __, 543 P.3d 1120, 1130 (2024).

1. *Misstatement of fact*

Lake first asserts the prosecutor at her trial misstated evidence in closing arguments. At trial, Kabance testified a man in the parking lot hit her head with a gun. During closing arguments, however, the prosecutor told the jury:

> "The two girls begin punching each other. They both described mutually punching. Fighting with one another and going to the ground wrestling around. Also fighting while on the ground.
> "*Everyone that you heard from testified that the only person that had a weapon that day was* [*Lake*]. During the fight no weapons were ever brandished between the two girls. None of the other witnesses brandished any kind of weapon. These girls are fighting on the ground." (Emphasis added.)

Considering Kabance's testimony, the State agrees the prosecutor misstated the evidence in closing. But it maintains the "error was unquestionably harmless." For the reasons explained below, we agree.

One reason the State argues the prosecutor's misstatement of fact is harmless is because Lake's defense counsel, in closing argument, correctly stated the evidence in

contention. After the prosecutor erred by telling the jury no one testified another gun was present besides Lake's gun, Lake's attorney stated in her closing argument:

> "You heard from [Kabance] as well on the other side of this fight. She had injuries on her arms and her face. She had a gash on her head from where she said she was hit with a weapon by a male. Again, we don't know who these other people were out in this parking lot. We don't know who else got involved.
> "At that stage in the game, Vanity and Trinity . . . and them were not around at that point according to [Kabance], but she indicates she was struck by another weapon in the head, which means there was another weapon there that night."

According to the State, Lake's closing argument "acknowledged [the prosecutor's] misstatement of fact and focused the jury back to this testimony by Kabance." Although we do not read the remarks as directly "correcting" the prosecutor's misstatement, we do find it significant that the misstatement itself was corrected by reminding the jury of Kabance's testimony. We also find it significant that Kabance herself provided conflicting testimony on this issue, since she also said at another point in her testimony that no other weapons besides Lake's were present. And the prosecutor seems to be describing a different time frame—perhaps a more relevant one—since Lake allegedly shot the gun while Kabance was fighting Vanity (and possibly Trinity), whom no one testified had weapons. The only other weapon mentioned was in a later portion of the incident, after Kabance had left Vanity and was near her vehicle.

A prosecutor's misstatement of fact does not warrant reversal if the comment was brief in context of the entire record and the misstated fact is insignificant in the State's case theory. *State v. Corbett*, 281 Kan. 294, 312, 130 P.3d 1179 (2006). The prosecutor's misstatement here was brief and the presence of another gun, at a different time and location in the sequence of events, was insignificant to the State's case theory. See *State v. Baker*, 281 Kan. 997, 1012-13, 135 P.3d 1098 (2006) (finding prosecutor's incorrect

16

statement in closing was insignificant to the State's theory and thus was not reversible error).

The State also points out that Lake's jury was told in Jury Instruction 1 that "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by the evidence, they should be disregarded." And generally juries are presumed to have followed a district court's instructions. *State v. Rogers*, 276 Kan. 497, 503, 78 P.3d 793 (2003). Thus, the State suggests the jury should not have relied on the prosecutor's misstatement of fact as evidence because the statement was not supported by evidence and should have been disregarded.

The Kansas Supreme Court has held that although proper jury instructions do not grant prosecutors an excuse for any errors, they are appropriate consideration in determining whether the prosecutor's error affected the verdict. *State v. Huddleston*, 298 Kan. 941, 956, 318 P.3d 140 (2014). We agree with the State that this instruction carries weight in our analysis as to whether the prosecutor's comment impacted Lake's trial.

Ultimately, we find the prosecutor's comments were harmless. The jury was told two disparate facts during closing arguments—one from the prosecutor and one from the defense counsel. The jury did not repeatedly hear incorrect statements from the prosecutor on the subject. Kansas appellate courts have held there are more serious, but harmless, misstatements of fact stated in closing arguments. See *State v. Gardner*, 264 Kan. 95, 106, 955 P.2d 1199 (1998) (concluding that an improper closing remark regarding the location of key evidence was harmless error because the misstatement was made in passing and was not a significant part of the State's case). We find that, under the circumstances here, the State has met its burden to show the prosecutor's misstatement did not contribute to the verdict.

17

2. *Misstatement of law*

Lake also argues the prosecutor made a misstatement of law in her rebuttal closing argument. She contends: "[T]he prosecutor equated accidental and reckless conduct as she addressed the possibility of the lesser-included offense of reckless aggravated battery." She relies on these comments to support her argument:

"Recklessly. Was this—did she drop the gun and it accidentally discharged? What evidence do you have that supports that? What evidence do you have in front of you that she didn't know that firing a loaded handgun would enter—would put a projectile, a bullet, into someone's body?

"She was just so reckless and careless she had no idea that a handgun that she would have had to load a bullet into the magazine, put the magazine into the gun and pull the trigger, was not going to cause great bodily harm? What, did she just drop it and it accidentally discharged? What evidence do you have of that? The State's argument is that she was not acting recklessly that day. She was acting knowingly."

Lake concludes: "Equating accidental conduct and reckless conduct is a misstatement of law." She argues Kansas caselaw demonstrates an accident cannot establish criminal negligence, let alone the mental state of recklessness.

To begin, context matters, and Lake fails to include the full context of the prosecutor's statement. Just before the prosecutor made the statement Lake now contests, the prosecutor told the jury:

"I'm going to finish my closing by talking—finishing talking about the law and then talking about reasonable doubt.

"So as [defense counsel] pointed out, Instruction Number 4 you're given a lesser. The only difference between these two are the culpable mental states. Was she acting knowingly? Did the State prove to you that she—beyond a reasonable doubt that she

18

acted knowingly? Did the State prove to you beyond a reasonable doubt that she acted recklessly? Or, did the State not prove this case to you beyond a reasonable doubt at all?"

By pairing this statement by the prosecutor, with the statements made by her that Lake now complains of, it is clear the prosecutor was discussing how the State had met its burden to show Lake committed knowing aggravated battery. The prosecutor began this string of statements by asking the jury if Lake was "acting knowingly?" or "acted recklessly?" or if the State did not prove either of these mental states beyond a reasonable doubt. The prosecutor did not ask the jury if Lake acted accidentally. And the prosecutor told the jury its focus was on knowing aggravated battery and not reckless aggravated battery. The prosecutor told the jury, "The State's argument is that she was not acting recklessly that day. She was acting knowingly." The State's focus was on knowing conduct, not reckless conduct.

In viewing the full context of the prosecutor's statements, we do not find she misstated the law as Lake contends. We also fail to see how this comment prejudiced Lake. Lake seems to contend this alleged mischaracterization of the law prejudiced her by incorrectly lowering the standard of proof required for reckless aggravated battery, by legally equating reckless conduct with accidental conduct. But whether the prosecutor misstated the standard of proof for the lesser included charge (which, as explained above, we do not find) is irrelevant because the jury did not convict Lake of that charge. The jury found the shooting was done "knowingly," which the jury instructions defined as "when the defendant is aware that her conduct was reasonably certain to cause the result complained about by the State." Since the jury convicted Lake of the primary charge, we fail to see how an alleged misunderstanding about the lesser included charge impacted that verdict.

While we agree the prosecutor erred by misstating facts in her closing, we do not find she erred by misstating the law. And we find that neither the factual error nor even a

presumed legal error prejudiced Lake's right to a fair trial. Lake is not entitled to a new trial based on comments by the prosecutor in closing.

*Were errors committed at Lake's trial cumulative?*

Last, Lake claims that, even if the errors she alleged did not individually prejudice her right to a fair trial, the cumulative effect of those errors sufficiently tainted the proceedings to entitle her to a new trial.

In analyzing a cumulative error claim, an appellate court will assess "whether the errors substantially prejudiced the defendant and denied the defendant a fair trial given the totality of the circumstances." *State v. Brown*, 316 Kan. 154, Syl. ¶ 3, 513 P.3d 1207 (2022). Appellate courts analyze "the errors in context, consider[] how the district court judge addressed the errors, review[] the nature and number of errors and whether they are connected, and weigh[] the strength of the evidence." *Brown*, 316 Kan. 154, Syl. ¶ 3.

The party benefiting from the errors must establish beyond a reasonable doubt that the cumulative effect of the errors did not affect the outcome. *Brown*, 316 Kan. at 173. The State recognizes it carries the burden of establishing that any errors were harmless.

On appeal, we have found two errors: (1) Based on Supreme Court precedent, we found the district court erred when it did not give the jury a reasonable doubt instruction referencing the lesser included offense, and (2) the prosecutor erred when she misstated the facts in her closing arguments. We found neither of these errors individually prejudiced Lake's right to a fair trial and we fail to see how accumulating them could change that analysis. The two errors were not connected nor were they "interrelated." *State v. Couch*, 317 Kan. 566, 651, 533 P.3d 630 (2023).

The only argument Lake makes is the accumulation of the failure to give the reasonable doubt jury instruction accumulated with the prosecutor's misstatement of the law about the standard of proof for recklessness "affected the jury's ability to fully and fairly consider reckless battery as a lesser-included offense." But again, we find this argument unpersuasive because the jury convicted Lake of the primary charge of knowing aggravated battery. Lake has failed to explain how the errors we found in her trial impacted the jury's verdict on this charge. Therefore we find she is not entitled to a new trial based on a claim of cumulative error.

Affirmed.